UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERWIN WAREHOUSE MANAGEMENT
LLC, as Program Administrator for and
Assignee of TERWIN MORTGAGE
WAREHOUSE TRUST II, SERIES XVI, and
TERWIN ADVISORS LLC,

                        Plaintiffs,

-against-

SPECTRUM FINANCIAL GROUP, INC.,
JERRY CRAIG, SR. and
JERRY CRAIG, JR.,

                        Defendants.

07 Civ. 5632 (LTS)
ECF Case

**PRELIMINARY
PRE-TRIAL STATEMENT**

**(a)**    **Statement of the Nature of the Action**

Background:

This action arises out of (a) two agreements entered into by plaintiffs with defendant Spectrum Financial Group, Inc. ("Spectrum"), the Loan Purchase Agreement and the Warehouse Purchase Agreement, (b) and certain alleged tortious conduct by defendants.

Warehouse Purchase Agreement: Plaintiff Terwin Warehouse Management LLC ("TWM") provides financing and other services to mortgage banking entities. TWM is the Program Administrator for and Assignee of Terwin Mortgage Warehouse Trust II, Series XVI. Pursuant to the Warehouse Purchase Agreement, Spectrum sold to the Trust certain Mortgage Loans. Defendants Jerry Craig, Sr. and Jerry Craig, Jr. (collectively, the "Craigs") are the principals of Spectrum. Each of the Craigs executed a guaranty ("Guaranty" or "Guarantees") unconditionally and irrevocably guaranteeing to the Trust the payment and performance of all of Spectrum's obligations under the Warehouse Purchase Agreement.

Loan Purchase Agreement: Plaintiff Terwin Advisors LLC ("TA") is in the business of securitizing residential mortgage loans. Pursuant to the Loan Purchase Agreement, TA purchased from Spectrum certain Mortgage Loans.

Procedural History:

On June 13, 2007, plaintiffs filed the Complaint against defendants and on August 6, 2007, defendants filed the Answer. On August 29, 2007, Spectrum filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, District of Arizona, Case No. 2:07-bk-04265 ("Spectrum Bankruptcy").

Causes of Action:

The Complaint contains twelve causes of action against Spectrum and/or the Craigs:

-- First Cause of Action: by TWM against Spectrum for breach of contract for Spectrum's failure to remit Margin Deficit of $262,699 in breach of the Warehouse Purchase Agreement;

-- Second and Third Causes of Action: by TWM against Spectrum for breach of contract for failure to transfer servicing rights and documents in breach of the Warehouse Purchase Agreement. The parties have resolved the Second and Third Causes of Action;

-- Fourth Cause of Action: by TWM against Jerry Craig, Sr. under the Guaranty executed by him of Spectrum's obligations under the Warehouse Purchase Agreement and for attorneys' fees associated with enforcement of the Guaranty;

-- Fifth Cause of Action: by TWM against Jerry Craig, Jr. under the Guaranty executed by him of Spectrum's obligations under the Warehouse Purchase Agreement and for attorneys' fees associated with enforcement of the Guaranty;

-- Sixth Cause of Action: by TA against Spectrum and the Craigs for conversion of payments-in-full in the amount of $1,222,129 on two mortgage loans purchased by TA from Spectrum, under the Loan Purchase Agreement, which the borrower mistakenly sent to Spectrum (the "PIF Payments");

-- Seventh Cause of Action: by TA against Spectrum for money had and received with respect to the PIF Payments;

-- Eighth Cause of Action: by TA against Spectrum for unjust enrichment with respect to the PIF Payments;

-- Ninth Cause of Action: by TA against Spectrum and the Craigs for an accounting of the PIF Payments;

-- <u>Tenth Cause of Action</u>: by TA against Spectrum for specific performance of Spectrum's obligation to repurchase certain "early payment default" loans;

-- <u>Eleventh Cause of Action</u>: by TA against Spectrum for damages for failure to repurchase certain "early payment default" loans; and

-- <u>Twelfth Cause of Action</u>: by TA against Spectrum for indemnification for attorneys' fees and related costs pursuant to the Loan Purchase Agreement.

The First, Seventh, Eighth, Tenth, Eleventh and Twelfth Causes of Action against Spectrum are subject to the automatic stay in the Spectrum Bankruptcy. The Second and Third Causes of Action are moot, since defendants have transferred to TA the servicing files. For these reasons, this Preliminary Pre-Trial Statement addresses only plaintiffs' Fourth (Guaranty by Jerry Craig, Sr.), Fifth (Guaranty by Jerry Craig, Jr.), Sixth (Conversion) and Ninth (Accounting) Causes of Action against the Craigs.

**(b)     Basis for Federal Jurisdiction**

Federal jurisdiction exists pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 and the parties are citizens of different states. Plaintiffs TWM and TA are limited liability companies organized under the laws of the State of Delaware with their principal places of business in New York. TWM and TA are each a citizen of New York, New Jersey and California for purposes of 28 U.S.C. § 1332. TWM's and TA's members, and the members of LLCs that are members of TWM and/or TA, are citizens of New York, New Jersey and California. None is a citizen of Arizona. Spectrum and the Craigs are citizens of the State of Arizona.

**(c)     Statement of All Material Uncontested or Admitted Facts**

Jerry Craig, Sr. is Spectrum's sole director and Jerry Craig, Jr. is Spectrum's President.

Spectrum sold mortgage loans to TA pursuant to a Purchase Agreement. After the Cut-Off Date for two Mortgage Loans (the "PIF Mortgage Loans"), the PIF Mortgage Loans were paid in full by the borrower thereon. However, the borrower mistakenly sent the payoff payments on the PIF Mortgage Loans, in an aggregate amount of not less than $1,222,129.01, to Spectrum, which was no longer the owner of the PIF Mortgage Loans after the Cut-Off Date. The Craigs admit that the PIF Payments were sent to and received by Spectrum. On several occasions, TA demanded that Spectrum forward the PIF Payments to TA as required by the Purchase Agreement and by principles of equity since TA is the beneficial owner of the PIF Payments.

TWM is the Program Administrator for Terwin Mortgage Warehouse Trust II, Series XVI (the "Trust"), pursuant to a Warehouse Purchase Agreement. Under

3

the Warehouse Purchase Agreement, Spectrum and TWM contracted for Spectrum to sell to the Trust mortgage loans, subject to the terms of the agreement.

On or about June 17, 2005, the Craigs each executed a guaranty unconditionally and irrevocably guaranteeing to the Trust the payment and performance of all of Spectrum's obligations under the Warehouse Purchase Agreement.

**(d)    Statement of All Uncontested Legal Issues**

The Guarantees unconditionally and irrevocably guaranteed to the Trust in an unlimited amount the due and punctual payment and/or performance of all of Spectrum's obligations under the Warehouse Purchase Agreement.

Plaintiffs' claims against Spectrum are subject to the automatic stay in the Spectrum Bankruptcy.

**(e)    Statement of All Legal Issues to be Decided by the Court**

Fourth and Fifth Causes of Action (Guarantees): Plaintiffs allege that the Craigs, as the unconditional and irrevocable guarantors of Spectrum's obligations under the Warehouse Purchase Agreement, are liable to plaintiffs for $262,699 for Spectrum's failure to remit margin deficit in contravention of the Warehouse Purchase Agreement.

Sixth Cause of Action (Conversion): Plaintiffs allege that Spectrum's unlawful retention of the PIF Payments constitutes an intentional and unauthorized exercise of control over property belonging to another, interfering with the lawful right of possession by plaintiffs in the PIF Payments. Plaintiffs allege that as responsible officers of Spectrum, the Craigs participated in the conversion complained of, had full knowledge of such conversion and failed to take any steps to prevent or correct the unlawful conversion of the $1.2 million of PIF Payments. The Court must decide whether the Craigs, as responsible officers of Spectrum, are liable to plaintiffs for $1.2 million for conversion of the PIF Payments.

Ninth Cause of Action (Accounting): Plaintiffs allege that the Craigs have unlawfully converted the PIF Payments, of which TA is the beneficial owner pursuant to the Loan Purchase Agreement, and hold the PIF Payments in constructive trust for TA and are acting wrongfully with respect to the PIF Payments. Plaintiffs also allege that under the trust fund doctrine, once Spectrum became insolvent, New York law imposed a fiduciary duty on the Craigs to hold Spectrum's assets in trust for the benefit of Spectrum's creditors, including TA. This Court must decide whether equity and/or the trust fund doctrine require an accounting by the Craigs for the PIF Payments.

**(f)    Each Party's Statement of Material Disputed Facts**

The Craigs deny that TA has fully performed all its obligations under and relating to the Purchase Agreement and deny that despite TA's demands that Spectrum

4

forward the PIF Payments to TA, the Craigs have failed and refused to forward the PIF Payments to TA.

The Craigs deny that the Trust and TWM have fully performed all their obligations under and relating to the Warehouse Purchase Agreement and that TWM sent Spectrum notice requesting it to transfer to the Trust margin deficit in the amount of $262,699 and that Spectrum refused to do so.

The Craigs deny that they are liable under their guarantees for $262,699 in margin deficit that Spectrum failed to remit to plaintiffs pursuant to the Warehouse Purchase Agreement.

**(g)      Statement of Plaintiff of the Legal Basis of Each Cause of Action**

Fourth and Fifth Causes of Action (Guarantees): The liability of the Craigs, as guarantors of Spectrum's obligations under the Warehouse Purchase Agreement, for Spectrum's corporate debt is not affected by the Spectrum Bankruptcy. See Union Trust Co. of Rochester v. Willsea, 275 N.Y. 164, 166 (1937) ("It is well-settled that the liability of a guarantor of a corporate debt is not affected by the institution of bankruptcy proceedings involving the corporation."). Moreover, plaintiffs are not prevented by the bankruptcy stay in the Spectrum Bankruptcy from proceeding against the Craigs, as guarantors of Spectrum's obligations under the Warehouse Purchase Agreement, for $262,699 in margin deficit owed by Spectrum to plaintiffs. See In re Larmar Estates, Inc., 5 B.R. 328, 330 (Bankr. E.D.N.Y. 1980) ("[T]he automatic stay provisions of [11 U.S.C.A.] § 362(a) does not protect the guarantors of a loan that was made to the debtors."); see also Teachers Ins. & Ann. Assoc. of America v. Butler, 803 F.2d 61, 65 (2d Cir. 1086) ("It is well established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.").

Sixth Cause of Action (Conversion): As responsible officers of Spectrum who (i) admit to receiving the PIF Payments, (ii) had full knowledge of Spectrum's conversion of the PIF Payments, (iii) participated in the conversion complained of, and (iv) failed to take any steps to prevent or correct the unlawful conversion of the PIF Payments, the Craigs are personally liable to TA for defendants' unlawful conversion of the PIF Payments. See Aeroglide Corp. v. Zeh, 301 F.2d 420, 421-22 (2d Cir. 1962) (applying New York law and holding that cooperative's liability for conversion accrued to cooperative's director who authorized such conversion; American Express Travel Related Svcs. Co. v. North Atlantic Res., Inc., 261 A.D.2d 310, 311 (1st Dep't 1999) ("[A] corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties").

Ninth Cause of Action (Accounting): (i) Equity requires an accounting for the PIF Payments, which belong to plaintiffs and which the Craigs wrongfully converted. See Fur & Wool Trading Co. v. Fox, 245 N.Y. 215, 217 (1927) ("Clearly a thief, having sold stolen goods, may be treated as a trustee of the proceeds …. Under such

circumstances broader relief may be obtained in equity …. Where necessary, an accounting may be had."); Frier v. J.W. Sales Corp., 261 A.D. 388, 390 (1st Dep't 1941) (holding accounting necessary where corporate officer who used corporation to convert plaintiff's funds was a "trustee ex maleficio"). (ii) Under the trust fund doctrine, once Spectrum became insolvent, New York law imposed a fiduciary duty upon the Craigs, as officers of Spectrum, to hold Spectrum's assets in trust for the benefit of Spectrum's creditors, including TA. See Credit Agricole Indosuez v. Rossiyskiy Kredit Bank, 94 N.Y.2d 541, 549 (2000) ("[T]he officers and directors of an insolvent corporation . . . hold the remaining corporate assets in trust for the benefit of its general creditors.") (citations omitted); Hughes v. BCI Int'l Holdings, Inc., 452 F. Supp. 2d 290, 308 (S.D.N.Y. 2006) ("Under New York law, directors of an insolvent corporation owe a fiduciary duty to preserve the assets of the corporation for the benefit of creditors."). As fiduciaries to TA, the Craigs must be required to account for the PIF Payments they wrongfully converted from TA.

**(h)    Statement of Defendants Craigs of Each Defense Asserted**

[None provided by defendants.]

**(i)    Statement of the Burden of Proof as to Each Cause of Action and Defense**

Fourth and Fifth Causes of Action (Guarantees): To recover under the guarantees executed by the Craigs, plaintiffs must prove the existence of the guarantees sued upon, the indebtedness and the non-payment of indebtedness.

Sixth Cause of Action (Conversion): Plaintiffs have the burden of establishing their right to possession of the PIF Payments and that the defendants exercised unauthorized control over the PIF Payments. To establish that the Craigs are individually liable for the conversion of the PIF Payments, plaintiffs must also prove that the Craigs, as officers of Spectrum, had knowledge of and participated in Spectrum's conversion of the PIF Payments.

Ninth Cause of Action (Accounting): Plaintiffs must show that (i) Spectrum or the Craigs hold the PIF Payments in constructive trust for TA and are acting wrongfully with respect to the PIF Payments, and as result, equity requires an accounting of the PIF Payments; or (ii) that a fiduciary relationship existed between plaintiffs and the Craigs and that the Craigs engaged in wrongdoing with respect to the fiduciary relationship, warranting an accounting.

**(j)    Amendments to Pleadings**

No amendments to pleadings after December 31, 2007.

**(k)    Consent to Proceed before a Magistrate Judge**

Plaintiffs consent to proceed before a Magistrate Judge for discovery purposes.

**(l)    Discovery Schedule**

All Rule 26(a)(1) disclosures shall be completed by October 12, 2007.

**(m)    Subjects on Which Disclosure May Be Needed and Proposed Discovery Cut-Off Date**

Plaintiffs require disclosure on the:

- PIF Payments, particularly discovery of financial records and communications to trace the movement of the PIF Payments from Spectrum to the Craigs or other possible defendants;

- Warehouse Purchase Agreement and four loans (Smith – No. 303714750; Smith – No. 303714751; Turner – No. 303714752; and Thompson – No. 303727043), for which plaintiffs claim the Craigs, as guarantors of Spectrum's obligations under the Warehouse Purchase Agreement, are liable in the amount of $262,699 in margin deficit owed by Spectrum to plaintiffs; and

- Defendants' contentions of non-liability, the bases of which have not disclosed by defendants.

Plaintiffs propose that all discovery concerning the PIF Payments shall be completed by October 31, 2007 and that all other discovery shall be completed by November 30, 2007.

**(n)    Expert Witnesses and Proposed Deadlines for Expert Discovery**

All Rule 26(a)(2) disclosures shall be completed by January 31, 2008.

All expert reports shall be exchanged by January 31, 2008.

All expert discovery shall be completed by February 28, 2008.

**(o)    Proposed Changes to Limitations on Discovery**

Spectrum's recent bankruptcy filing gives rise to a reasonable concern on plaintiffs' part that, absent immediate discovery to trace the PIF Payments, these funds may never be recovered. Plaintiffs propose curtailing the time for the parties to respond to document requests, as set forth in F.R.C.P. 34, pertaining to the PIF Payments from 30 days to 20 days.

**(p)** **Status of Settlement Discussions**

The parties have resolved plaintiffs' Second and Third Causes of Action. However, defendants have not indicated any willingness to discuss payment of money to plaintiffs.

**(q)** **Jury/Non-Jury Trial and Estimated Trial Days**

Plaintiffs request a non-jury trial and anticipate that plaintiffs will need three days to present plaintiffs' case.

**(r)** **Other Orders**

None.

Dated: September 18, 2007

| MILLER & WRUBEL P.C. | INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP |
|---|---|
| by: *[signature]* <br> Charles R. Jacob III (CRJ-4143) <br> Haynee C. Kang (HCK-9957) <br> 250 Park Avenue <br> New York, New York 10177 <br> Tel. (212) 336-3500 <br> Fax (212) 336-3555 <br> *Attorneys for Plaintiff* | by: _____ <br> Mark E. Klein (MK-5145) <br> Susan B. Ratner (SR-1446) <br> 250 Park Avenue <br> New York, New York 10177 <br> Tel. (212) 907-9600 <br> Fax (212) 907-9681 <br> *Attorneys for Defendants* |