Charles R. Jacob III (CJ-4143)
Haynee C. Kang (HK-9957)
MILLER & WRUBEL P.C.
250 Park Avenue
New York, New York 10177
(212) 336-3500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TERWIN WAREHOUSE MANAGEMENT LLC, as Program Administrator for and Assignee of TERWIN MORTGAGE WAREHOUSE TRUST II, SERIES XVI, and TERWIN ADVISORS LLC,

                Plaintiffs,

-against-

SPECTRUM FINANCIAL GROUP, INC.,
JERRY CRAIG, SR. and
JERRY CRAIG, JR.,

                Defendants.

07 Civ. 5632 (LTS)
ECF CASE

**DECLARATION OF CHARLES R. JACOB III IN PARTIAL OPPOSITION TO MOTION OF DEFENDANTS' COUNSEL TO WITHDRAW**

---

        CHARLES R. JACOB III hereby declares under penalty of perjury as follows:

        1.    I am a member of the Bar of this Court and of Miller & Wrubel P.C., attorneys for plaintiffs Terwin Warehouse Management LLC ("TWM"), as Program Administrator for and Assignee of Terwin Mortgage Warehouse Trust II, Series XVI ("Trust"), and Terwin Advisors LLC ("TA").

        2.    I submit this declaration in partial opposition to the motion of Ingram Yuzek Gainen Carroll & Bertolotti, LLP ("Ingram Yuzek") to withdraw, ***without condition***, as counsel to defendants.

1

3.  As set forth below, to grant Ingram Yuzek's motion without condition would vitiate the Court's September 20, 2007 Order (the "September 20 Order") (Ex. 1 hereto) in this action, which directed that defendants Jerry Craig, Sr. and Jerry Craig, Jr. (collectively, the "Craigs") ***"shall appear by counsel ... [or] pro se ... and shall participate in the required consultations with plaintiffs' counsel and preparation of the preliminary pretrial statement beforehand."*** (Emphasis added.) If Ingram Yuzek is permitted to withdraw without the condition that, before such withdrawal, new counsel appear or the Craigs appear pro se, there will be no one to "participate in the required consultations with plaintiffs' counsel" as expressly required by the September 20 Order.

**Nature of this Action**

4.  This action arises out of (i) two agreements entered into by plaintiffs with defendant Spectrum Financial Group, Inc. ("Spectrum"), the Loan Purchase Agreement and the Warehouse Purchase Agreement,[1] (ii) two guarantees entered into by the Craigs (collectively, the "Guarantees") unconditionally and irrevocably guaranteeing to the Trust Spectrum's obligations under the Warehouse Purchase Agreement, and (iii) certain alleged tortious conduct by the individual defendants, the Craigs.

5.  The Complaint contains twelve causes of action against Spectrum and/or the Craigs. The First, Seventh, Eighth, Tenth, Eleventh and Twelfth Causes of Action are subject to the automatic stay in the Spectrum Bankruptcy, as defined and discussed below in ¶16 infra. The Second and Third Causes of Action are moot, since the

---

[1] All capitalized terms not otherwise defined are used with the meanings set forth in the Complaint. (Ex. 2 hereto).

parties have resolved the issues related to those causes of action. The remaining active claims are plaintiffs' Fourth (Guaranty by Jerry Craig, Sr.), Fifth (Guaranty by Jerry Craig, Jr.), Sixth (Conversion) and Ninth (Accounting) Causes of Action.

6. In the Answer (Ex. 3 hereto), the Craigs admit that they executed Guarantees (Id. at ¶ 5), which unconditionally and irrevocably guaranteed to the Trust in an unlimited amount the due and punctual payment and/or performance of all of Spectrum's obligations under the Warehouse Purchase Agreement.

7. As alleged in the Complaint, Spectrum failed to remit $262,699 in margin deficit to the Trust as required by the Warehouse Purchase Agreement. As the unconditional and irrevocable guarantors of Spectrum's obligations under the Warehouse Purchase Agreement, the Craigs are liable to plaintiff TWG in the amount of $262,699. (Fourth and Fifth Causes of Action.)

8. In addition, the borrower of two Mortgage Loans purchased by TA from Spectrum (the "PIF Mortgage Loans") paid those loans in full. However, the borrower mistakenly sent the payoff payments on the PIF Mortgage Loans, in an aggregate amount of not less than $1,222,129 (the "PIF Payments"), to Spectrum, which was no longer the owner of the PIF Mortgage Loans.

9. In the Answer, the Craigs admit that the PIF Payments were sent to and received by Spectrum. The Craigs also admit that on several occasions, TA demanded that Spectrum forward the PIF Payments to TA as required by the Loan Purchase Agreement. (Ex. 3, at ¶¶ 9-10.)

10. The Complaint alleges that Jerry Craig, Sr., as Spectrum's sole director, and Jerry Craig, Jr. as Spectrum's president, participated in the conversion

3

complained of, had full knowledge of such conversion, and failed to take any steps to prevent or correct the unlawful conversion of the $1.2 million of PIF Payments, and are therefore liable to plaintiff TA for $1.2 million. (Sixth and Ninth Causes of Action.)

**Procedural History**

11.     Plaintiffs filed the Complaint on June 13, 2007, and completed service of process of the Summons and Complaint on Spectrum on June 18, 2007, and on the Craigs on July 2, 2007. Defendants' response to the Complaint was due no later than July 23, 2007.

12.     Immediately after filing the Complaint, and pursuant to Your Honor's Individual Practices, on June 13, 2007, I sent defendants a letter (Ex. 4 hereto), enclosing the Summonses and Complaint and requesting to confer about plaintiffs' allegation that the Craigs wrongfully converted for their personal use the $1.2 million in PIF Payments which belong to plaintiffs and which the mortgagor mistakenly sent to defendants. Defendants did not respond.

13.     On July 18, 2007, Susan Ratner of Ingram Yuzek contacted me by telephone for the first time on behalf of defendants. During that telephone conversation, I provided Ms. Ratner with background on the action, particularly with respect to the PIF Payments. Later that day, Haynee Kang, an associate in my office, sent Ms. Ratner copies of the Complaint, my June 13 letter to defendants, and other documents relevant to this action. Ms. Ratner requested a two-week extension of time to respond to the Complaint. As a professional courtesy, I granted defendants a two-week extension, until August 6, 2007, to allow Ingram Yuzek to get up to speed in the action and to prepare a response to the Complaint.

14. On August 6, 2007, defendants filed a bare-bones Answer, which contains blanket denials and asserts defenses without any facts alleged to support them. To date, the Craigs have not disclosed the bases of their contentions of non-liability.

15. On August 3, 2007, Ms. Kang sent Ms. Ratner a copy of the Initial Conference Order (Ex. 5 hereto), which plaintiffs previously served on defendants. Since that time, Ms. Kang made numerous efforts to cause defendants' counsel to confer and to prepare a preliminary pre-trial statement, as required by the Initial Conference Order. On August 23, 2007, the day before the parties were to confer pursuant to the Initial Conference Order, Ms. Ratner informed Ms. Kang of Spectrum's intention to file for bankruptcy.

16. On August 28, 2007, Spectrum filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, District of Arizona, Case No. 2:07-bk-04265 ("Spectrum Bankruptcy"). On or about August 28, 2007, Ms. Kang contacted Ms. Ratner, and noted that the automatic stay did not affect plaintiffs' claims against the Craigs and urged defendants to confer and prepare a preliminary pre-trial statement, as required by the Initial Conference Order. Ms. Kang's efforts were unsuccessful.

17. On September 5, 2007, and on the eve of the Initial Conference scheduled for September 7, 2007, defendants requested a three-week adjournment of the Initial Conference because of the Rosh Hashanah holiday. Plaintiffs requested that the Court reschedule the conference for a date as soon as convenient for the Court, preferably the week of September 17, 2007. Judge Griesa adjourned the Initial Conference to September 25, 2007.

18. On September 16, 2007, Ms. Kang sent Ms. Ratner a draft of the preliminary pre-trial statement, which was due to the Court on September 18, 2007. On September 17, 2007, Ms. Kang contacted Ms. Ratner to discuss defendants' comments to the draft preliminary pre-trial statement. Later that day, instead of conferring about the draft preliminary pre-trial statement, Ms. Ratner informed Ms. Kang of defendants' request that Ingram Yuzek withdraw as counsel.

19. On September 18, 2007, plaintiffs filed the preliminary pre-trial statement, signed by plaintiffs, but not the Craigs.

20. On September 20, 2007, the Court issued the September 20 Order, which adjourned the Initial Conference to October 26, 2007, and directed that the Craigs *"shall appear by counsel ... [or] pro se ... and shall participate in the required consultations with plaintiffs' counsel and preparation of the preliminary pretrial statement beforehand."* (Ex. 1) (Emphasis added.)

21. On September 25, 2007, Ingram Yuzek filed the instant motion to withdraw as counsel.

**Plaintiffs Will Be Substantially Prejudiced
If the Court Permits the Craigs to Cause
Ingram Yuzek to Withdraw without Condition
and Further Delay the Prosecution of this Action**

22. The Craigs have engaged in a pattern of delay to avoid (i) their obligations pursuant to their Guarantees for $262,699 in margin deficit owed by Spectrum to the Trust and (ii) their liability for their participation, as principals of Spectrum, a closely-held corporation, in the conversion of $1.2 million in PIF Payments belonging to TA.

6

23. For four months, since the commencement of this action on June 13, 2007, plaintiffs have tried to confer with the Craigs or their counsel as to the $1.2 million in PIF Payments wrongfully converted by defendants, or at least obtain discovery to trace the movement of the PIF Payments and the sequence of events leading to the alleged conversion of the PIF Payments, to no avail.

24. Instead, the Craigs waited until five days before their response to the Complaint was due, presumably for the sole purpose of avoiding default, to cause Ingram Yuzek to appear in this action on their behalf, necessitating Ingram Yuzek to request an extension of time to respond to the Complaint.

25. Plaintiffs have made numerous attempts to confer with the Craigs, pursuant to the Initial Conference Order, and to set a discovery schedule for this action. Instead, the Craigs also caused the Initial Conference in this action, originally scheduled for September 14, 2007, to be *twice delayed* until October 26, 2007.

26. In the September 20 Order, the Court ordered the Craigs to appear pro se or by counsel to confer and prepare a preliminary pre-trial statement and to attend the Initial Conference, now scheduled for October 26, 2007.

27. Since the September 20 Order, which was issued nearly twenty (20) days ago, the Craigs have not appeared pro se or by counsel to confer and prepare a preliminary pre-trial statement.

28. I believe the Craigs are again attempting to delay this action further by causing Ingram Yuzek to withdraw as counsel for the Craigs in this action to avoid the September 20 Order.

**Conclusion**

29.     To avoid further delay in the prosecution of this action, plaintiffs respectfully request that the Court order that (a) the September 20 Order remain in effect and (b) Ingram Yuzek may not withdraw as counsel for the Craigs until the Craigs appear pro se or retain substitute counsel.

> I declare under penalty of perjury that the foregoing is true and correct.
>
> Executed on October 9, 2007
>
> _____
> CHARLES R. JACOB III