Charles R. Jacob III (CJ-4143)
Haynee C. Kang (HK-9957)
MILLER & WRUBEL P.C.
250 Park Avenue
New York, New York 10177
(212) 336-3500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERWIN WAREHOUSE MANAGEMENT LLC, as Program Administrator for and Assignee of TERWIN MORTGAGE WAREHOUSE TRUST II, SERIES XVI, and TERWIN ADVISORS LLC,<br><br>              Plaintiffs,<br><br>-against-<br><br>SPECTRUM FINANCIAL GROUP, INC., JERRY CRAIG, SR. and JERRY CRAIG, JR.,<br><br>              Defendants. | 07 Civ. 5632 (LTS)<br>ECF CASE<br><br>**DECLARATION OF<br>CHARLES R. JACOB III<br>IN SUPPORT OF ORDER TO<br>SHOW CAUSE TO PRECLUDE<br>EVIDENCE AND DEFENSES** |

        CHARLES R. JACOB III hereby declares under penalty of perjury as follows:

        1.     I am a member of the Bar of this Court and of Miller & Wrubel P.C., attorneys for plaintiffs Terwin Warehouse Management LLC ("TWM"), as Program Administrator for and Assignee of Terwin Mortgage Warehouse Trust II, Series XVI ("Trust"), and Terwin Advisors LLC ("TA") (collectively "Plaintiffs").

        2.     I submit this declaration in support of Plaintiffs' motion, by order to show cause, seeking an order pursuant to Fed.R.Civ.P. 37(b)(2)(B), (C) and Paragraph 7 of the Court's Initial Conference Order, dated June 20, 2007 (the "Initial Conference Order"), precluding evidence and defenses of defendants Jerry Craig, Sr. and Jerry Craig,

1

Jr. (the "Craigs" or the "Individual Defendants") with respect to the Fourth, Fifth and Sixth Causes of Action of Plaintiffs' Complaint, dated June 13, 2007.

**Nature of this Action**

3.  This action arises out of (i) two agreements entered into by Plaintiffs with defendant Spectrum Financial Group, Inc. ("Spectrum"), the Loan Purchase Agreement and the Warehouse Purchase Agreement,[1] (ii) two guarantees entered into by the Craigs (collectively, the "Guarantees") unconditionally and irrevocably guaranteeing to the Trust Spectrum's obligations under the Warehouse Purchase Agreement, and (iii) certain tortious conduct by the Craigs.

4.  The Complaint contains twelve causes of action against Spectrum and/or the Craigs. The First, Seventh, Eighth, Tenth, Eleventh and Twelfth Causes of Action are subject to the automatic stay in the Spectrum Bankruptcy, as defined and discussed below in ¶16 infra. The Second and Third Causes of Action are moot, since the parties have resolved the issues related to those causes of action. The remaining active claims are Plaintiffs' Fourth (Guaranty by Jerry Craig, Sr.), Fifth (Guaranty by Jerry Craig, Jr.), Sixth (Conversion) and Ninth (Accounting) Causes of Action.[2]

5.  In the Answer (Ex. 2 hereto), the Craigs admit that they executed Guarantees (Id. at ¶ 5), which unconditionally and irrevocably guaranteed to the Trust in an unlimited amount the due and punctual payment and/or performance of all of Spectrum's obligations under the Warehouse Purchase Agreement.

---

[1] All capitalized terms not otherwise defined are used with the meanings set forth in the Complaint. (Ex. 1 hereto).

[2] For purposes of the instant motion, Plaintiffs do not seek relief with respect to the Ninth Cause of Action.

2

6.  As alleged in the Complaint, Spectrum failed to remit $262,699 in margin deficit to the Trust as required by the Warehouse Purchase Agreement. As the unconditional and irrevocable guarantors of Spectrum's obligations under the Warehouse Purchase Agreement, the Craigs are liable to plaintiff TWG in the amount of $262,699. (Fourth and Fifth Causes of Action.)

7.  In addition, the borrower of two Mortgage Loans purchased by TA from Spectrum (the "PIF Mortgage Loans") paid those loans in full. However, the borrower mistakenly sent the payoff payments on the PIF Mortgage Loans, in an aggregate amount of not less than $1,222,129 (the "PIF Payments"), to Spectrum, which was no longer the owner of the PIF Mortgage Loans.

8.  In the Answer, the Craigs admit that the PIF Payments were sent to and received by Spectrum. The Craigs also admit that on several occasions, TA demanded that Spectrum forward the PIF Payments to TA as required by the Loan Purchase Agreement. (Ex. 2, at ¶¶ 9-10.)

9.  The Complaint alleges that Jerry Craig, Sr., as Spectrum's sole director, and Jerry Craig, Jr. as Spectrum's president, participated in the conversion complained of, had full knowledge of such conversion, and failed to take any steps to prevent or correct the unlawful conversion of the $1.2 million of PIF Payments, and are therefore liable to plaintiff TA for $1.2 million. (Sixth Cause of Action.)

**Procedural History**

10. Plaintiffs filed the Complaint on June 13, 2007, and completed service of process of the Summons and Complaint on Spectrum on June 18, 2007, and on

the Craigs on July 2, 2007. Defendants' response to the Complaint was due no later than July 23, 2007.

11.     Immediately after filing the Complaint, and pursuant to the Court's Individual Practices, on June 13, 2007, I sent defendants a letter enclosing the Summonses and Complaint and requesting to confer about Plaintiffs' allegation that the Craigs wrongfully converted for their personal use the $1.2 million in PIF Payments which belong to Plaintiffs and which the mortgagor mistakenly sent to defendants. Defendants did not respond.

12.     On June 20, 2007, this Court issued the Initial Conference Order (Ex. 3 hereto), ordering the parties to confer with respect to the preparation of a joint preliminary pre-trial statement by August 24, 2007, 2007; to file a joint preliminary pre-trial statement by September 7, 2007; and to appear for a pre-trial conference on September 14, 2007.

13.     On July 18, 2007, Susan Ratner of Yuzek Gainen Carroll & Bertolotti, LLP ("Ingram Yuzek") contacted me by telephone for the first time on behalf of defendants. Ms. Ratner requested a two-week extension of time to respond to the Complaint. As a professional courtesy, I granted defendants a two-week extension, until August 6, 2007, to allow Ingram Yuzek to get up to speed in the action and to prepare a response to the Complaint.

14.     On August 6, 2007, defendants filed a bare-bones Answer (Ex. 2), which contains blanket denials and asserts boilerplate defenses without any facts alleged to support them.

15. To date, the Craigs have not disclosed the bases of their contentions of non-liability.

16. On August 3, 2007, my associate Haynee Kang, sent Ms. Ratner a copy of the Initial Conference Order (Ex. 3), which Plaintiffs previously served on defendants. Thereafter, Ms. Kang made numerous efforts to cause defendants' counsel to confer and to prepare a preliminary pre-trial statement, as required by Paragraph 4 of the Initial Conference Order. On August 23, 2007, the day before the parties were to confer pursuant to the Initial Conference Order, Ms. Ratner informed Ms. Kang of Spectrum's intention to file for bankruptcy.

17. On August 28, 2007, Spectrum filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, District of Arizona, Case No. 2:07-bk-04265 ("Spectrum Bankruptcy"). On or about August 28, 2007, Ms. Kang contacted Ms. Ratner, and noted that the automatic stay did not affect Plaintiffs' claims against the Craigs and urged the Individual Defendants to confer and prepare a preliminary pre-trial statement, as required by the Initial Conference Order. Ms. Kang's efforts were unsuccessful.

18. On September 5, 2007, and on the eve of the Initial Conference scheduled for September 7, 2007, Ingram Yuzek requested a three-week adjournment of the Initial Conference because of the Rosh Hashanah holiday. Plaintiffs requested that the Court reschedule the conference for a date as soon as convenient for the Court, preferably the week of September 17, 2007. Judge Griesa adjourned the Initial Conference to September 25, 2007.

19. On September 16, 2007, Ms. Kang sent Ms. Ratner a draft of the preliminary pre-trial statement, which was due to the Court on September 18, 2007. On September 17, 2007, Ms. Kang contacted Ms. Ratner to discuss the Individual Defendants' comments to the draft preliminary pre-trial statement. Later that day, instead of conferring about the draft preliminary pre-trial statement, Ms. Ratner informed Ms. Kang of defendants' request that Ingram Yuzek withdraw as counsel.

20. On September 18, 2007, pursuant to Paragraph 4 of the Initial Conference Order, Plaintiffs filed the preliminary pre-trial statement, signed by Plaintiffs, but not by the Craigs.

21. On September 20, 2007, the Court issued an order (the "September 20 Order"), which adjourned the Initial Conference to October 26, 2007, and directed that the Craigs "*shall appear by counsel ... [or] pro se ... and shall participate in the required consultations with plaintiffs' counsel and preparation of the preliminary pretrial statement beforehand.*" (Ex. 4 hereto) (emphasis added).

22. On September 25, 2007, Ingram Yuzek filed a motion to withdraw as counsel. Plaintiffs partially opposed Ingram Yuzek's motion to withdraw on the grounds that any such withdrawal should be conditioned on the Individual Defendants (a) appearing by new counsel or pro se and to confer with plaintiffs' counsel no later than October 15, 2007, as required by the Initial Conference Order; and (b) filing a joint preliminary pre-trial statement, by October 19, 2007, as required by the Initial Conference Order.

23. On October 15, 2007, the Court granted the motion of Ingram Yuzek to withdraw (the "October 15 Order"), and again ordered that the Craigs "*shall*

6

*promptly appear in this action pro se or by new counsel, and that they shall participate in consultations and in the preparation of the joint Preliminary Pretrial Statement in advance of the October 26, 2007, conference as required by this Court's June 21, 2007 Initial Conference Order.*" (Ex. 5 hereto) (emphasis added).

24. On October 16, 2007, Ms. Kang sent by facsimile and overnight delivery copies of the October 15 Order, the September 20 Order, the Initial Conference Order, and a draft of the preliminary pre-trial statement to the Craigs and requested that they provide Plaintiffs with their comments, additions and/or revisions to the Pre-Trial Statement prior to October 19, 2007. (Ex. 6 hereto). The Craigs did not respond or otherwise appear pro se or by new counsel, as required by the October 15 Order, September 20 Order and the Initial Conference Order.

25. On October 19, 2007, Plaintiffs again filed the preliminary pre-trial statement, signed only by Plaintiffs. In violation of the Initial Conference Order and the September 20 and October 15 Orders, and despite Plaintiffs' best efforts, the Craigs did not confer with respect to, prepare, or execute the preliminary pre-trial statement.

26. Plaintiffs appeared at the Initial Conference on October 26, 2007. In violation of the Initial Conference Order and the September 20 and October 15 Orders, the Craigs did not appear at the October 26 Initial Conference pro se or by new counsel.

27. As a result of the Craigs' repeated violations of the Initial Conference Order and the September 20 and October 15 Orders, the Court suggested that Plaintiffs make the instant motion to preclude the Craigs' evidence and defenses.

**No Novel Issues of Law**

28. This motion raises no novel issues of law. Accordingly, Plaintiffs respectfully request that the Court waive the requirement of Local Civil Rule 7.1 that Plaintiffs submit a separate memorandum of law.

**The Court Should Preclude**
**The Craigs' Evidence and Defenses**

29. The Craigs have engaged in a pattern of delay to avoid (i) their obligations pursuant to their Guarantees for $262,699 in margin deficit owed by Spectrum to the Trust and (ii) their liability for their participation, as principals of Spectrum, a closely-held corporation, in the conversion of $1.2 million in PIF Payments belonging to TA.

30. For almost five months, since the commencement of this action on June 13, 2007, Plaintiffs have tried to confer with the Craigs or their counsel as to the $1.2 million in PIF Payments wrongfully converted by defendants, or at least obtain discovery to trace the movement of the PIF Payments and the sequence of events leading to the alleged conversion of the PIF Payments, to no avail.

31. Plaintiffs have made numerous attempts to confer with the Craigs, pursuant to the Initial Conference Order, and to set a discovery schedule for this action. Instead, the Craigs also caused the Initial Conference in this action, originally scheduled for September 14, 2007, to be *twice delayed* until October 26, 2007.

32. In the September 20 and October 15 Orders, the Court ordered the Craigs to appear pro se or by counsel to confer and prepare a preliminary pre-trial statement and to attend the Initial Conference.

33. Instead of complying with the Initial Conference Order and the September 20 and October 15 Orders, the Craigs have ignored the Court's orders and have not appeared pro se or by counsel to confer and prepare a preliminary pre-trial statement.

34. Paragraph 7 of the Initial Conference Order provides:

> In the event that any party fails to comply with this Order, the Court may impose sanctions or take other action as appropriate. <u>Such sanction and action may include</u> assessing costs and attorneys' fees, <u>precluding evidence or defenses,</u> dismissing the action, and/or the imposition of other appropriate penalties. [Emphasis added].

35. The Craigs have "fail[ed] to comply with [the Initial Conference] Order."

36. Moreover, Fed.R.Civ.P. 37(b)(2) provides, in pertinent part:

> If a party...fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: ... (B) <u>An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;</u> (C) <u>An order striking out pleadings or parts thereof,</u> ... or rendering a judgment by default against the disobedient party . . . . [Emphasis added].

37. A district court has wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2). <u>See</u> <u>Bobal v. Rensselaer Polytechnic Inst.</u>, 916 F.2d 759, 764 (2d Cir.1990) (affirming dismissal of action as a sanction for willful violation of the district court's discovery order), cert. denied, 499 U.S. 943, 111 S. Ct. 1404, 113 L.Ed.2d 459 (1991); <u>Daval Steel Products, a Div. of Francosteel Corp. v.</u>

M/V Fakredine, 951 F.2d 1357 (2d Cir. 1991) (Rule 37(b)(2) sanctions can be imposed for violation of a specific, previously entered court order).

38.     The Second Circuit has emphasized that "discovery orders are meant to be followed," and in certain circumstances has imposed litigation-ending sanctions when parties have failed to comply. Bambu Sales, Inc. v. Ozak Trading, Inc., 58 F.3d 849, 853 (2d Cir.1995); Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d 67, 73 (2d Cir.1988); see also Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam).

39.     Where, as here, a defendant willfully and deliberately disregards a court's valid orders, sanctions are appropriate. See De Vos & Co. v. Profilati Italia, S.r.l., 1997 WL 109474 (S.D.N.Y. Mar. 11, 1997) (sanction of striking the Answer and Amended Answer warranted along with the entry of judgment pursuant to Fed.R.Civ.P. 37(b)(2)(C) based on defendants' refusal to participate in discovery, refusal to obey the orders and directions of the Magistrate Judge, and, for all intents and purposes, abandonment of any legitimate defense to this action).

40.     There are three causes of action that remain against the Craigs: the Fourth (by TWM against Craig, Sr. on the guaranty), the Fifth (by TWM against Craig, Jr. on the guaranty) and the Sixth (by TA for conversion).

41.     Accordingly, Plaintiffs respectfully request that the Court preclude any evidence proffered by, or defenses asserted by the Craigs with respect to, plaintiffs' Fourth (by TWM against Craig, Sr. on the guaranty), Fifth (by TWM against Craig, Jr. on the guaranty) and Sixth (by TA for conversion) Causes of Action.

42.  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 31st day of October, 2007

_____
Charles R. Jacob III