# EXHIBIT A

Charles R. Jacob III (CJ-4143)
Haynee C. Kang (HK-9957)
MILLER & WRUBEL P.C.
250 Park Avenue
New York, New York 10177
(212) 336-3500

JUDGE SWAIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**'07 CIV 5632**

07 Civ. _____ (    )

---

TERWIN WAREHOUSE MANAGEMENT
LLC, as Program Administrator for and
Assignee of TERWIN MORTGAGE
WAREHOUSE TRUST II, SERIES XVI, and
TERWIN ADVISORS LLC,

                        Plaintiffs,

-against-

SPECTRUM FINANCIAL GROUP, INC.,
JERRY CRAIG, SR. and
JERRY CRAIG, JR.,

                      Defendants.

**COMPLAINT**



RECEIVED
JUN 13 2007
U.S.D.C. S.D. N.Y.
CASHIERS

---

      Plaintiffs Terwin Warehouse Management LLC ("TWM") and Terwin

Advisors LLC ("TA"), by their attorneys Miller & Wrubel P.C., as and for their

Complaint against the defendants allege as follows:

### ALLEGATIONS COMMON TO
### ALL CAUSES OF ACTION

#### The Parties

      1.    TWM is a limited liability company organized under the laws of

the State of Delaware with its principal place of business at 45 Rockefeller Plaza, Suite

420, New York, New York 10111.  TWM is engaged in the business of, inter alia,

purchasing, selling and lending with respect to mortgage loans.

2.    TA is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 45 Rockefeller Plaza, Suite 420, New York, New York 10111. TA is engaged in the business of, inter alia, purchasing, selling and securitizing mortgage loans.

3.    TWM and TA are each a citizen of New York, New Jersey and California for purposes of 28 U.S.C. § 1332. TWM's and TA's members, and the members of LLCs that are members of TWM and/or TA, are citizens of New York, New Jersey and California. None is a citizen of Arizona.

4.    TWM is the Program Administrator for Terwin Mortgage Warehouse Trust II, Series XVI (the "Trust"), pursuant to a Seller's Purchase, Warranties and Servicing Agreement dated as of June 17, 2005 (the "Warehouse Purchase Agreement"), between the Trust as Purchaser and defendant Spectrum Financial Group, Inc. ("Spectrum") as Seller. (Hereafter, capitalized terms not otherwise defined are used with the meanings set forth for them in the Warehouse Purchase Agreement or the Loan Purchase Agreement (as defined below).)

5.    The Trust is a Delaware statutory trust with its principal place of business at 45 Rockefeller Plaza, Suite 420, New York, New York 10111. The Trust's principal purpose is to purchase, own and sell mortgage loans.

6.    Pursuant to the Warehouse Purchase Agreement, TWM acts as Program Administrator for the Trust. The Warehouse Purchase Agreement provides, in Section 1.01 (definition of "Purchaser"), that "[t]he duties, rights and obligations of the Purchaser [the Trust] hereunder shall from time to time be performed or enforced, as applicable, by the Program Administrator . . . ." Accordingly, TWM brings its claims in

this action as Program Administrator and assignee of the Trust's claims against defendants to enforce the rights of the Trust against defendants. Such assignment is expressly permitted by Section 13.12 of the Warehouse Purchase Agreement.

7.    On information and belief, defendant Spectrum is a corporation organized under the laws of the State of Arizona with its principal place of business at 7047 E. Greenway Parkway, Suite 400, Scottsdale, AZ 85254. On further information and belief, Spectrum is engaged in the business of, inter alia, originating and selling mortgage loans.

8.    On information and belief, defendant Jerry Craig, Sr. ("Craig Sr.") is a citizen of the State of Arizona with his principal place of business at 7047 E. Greenway Parkway, Suite 400, Scottsdale, AZ 85254.

9.    On information and belief, defendant Jerry Craig, Jr. ("Craig Jr.") is a citizen of the State of Arizona with his principal place of business at 7047 E. Greenway Parkway, Suite 400, Scottsdale, AZ 85254.

10.    On information and belief, Craig Sr. and Craig Jr. are the principals of Spectrum and control its actions.

## Jurisdiction and Venue

11.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

12.    Defendants are subject to personal jurisdiction in this District because they consented to personal jurisdiction in the State of New York and, in the

alternative, because they transacted business in the State of New York and contracted to supply goods and services in the State of New York.

13.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because defendants consented to exclusive venue in this Court and are subject to personal jurisdiction here, and, in the alternative, because a substantial part of the events and omissions giving rise to the claims in this action occurred, and a substantial part of the property that is the subject of this action is situated, in this District.

### The Warehouse Purchase Agreement and Guaranties

14.     In the Warehouse Purchase Agreement, Spectrum and the Trust contracted for Spectrum to sell to the Trust certain Mortgage Loans, subject to the terms and conditions in the Purchase Agreement. In § 13.21 of the Warehouse Purchase Agreement, Spectrum expressly consented to the exclusive jurisdiction and venue of this Court as to any claim relating to the Warehouse Purchase Agreement.

15.     On or about June 17, 2005, Craig Sr. executed a Guaranty (the "Craig Sr. Guaranty") unconditionally and irrevocably guaranteeing to the Trust in an unlimited amount the due and punctual payment and/or performance of all of Spectrum's obligations under the Warehouse Purchase Agreement. In § 10.6 of the Craig Sr. Guaranty, Craig Sr. expressly consented to the exclusive jurisdiction and venue of this Court as to any claim relating to the Craig Sr. Guaranty.

16.     On or about June 17, 2005, Craig Jr. executed a Guaranty (the "Craig Jr. Guaranty") unconditionally and irrevocably guaranteeing to the Trust in an unlimited amount the due and punctual payment and/or performance of all of Spectrum's obligations under the Warehouse Purchase Agreement. In § 10.6 of the Craig Jr.

Guaranty, Craig Jr. expressly consented to the exclusive jurisdiction and venue of this

Court as to any claim relating to the Craig Jr. Guaranty.

**Spectrum's Failure to Perform Its Obligations
Under the Warehouse Purchase Agreement**

17.    Pursuant to the Warehouse Purchase Agreement, the Trust

purchased from Spectrum a substantial number of Mortgage Loans.

18.    The Trust and TWM have fully performed all their obligations

under and relating to the Warehouse Purchase Agreement.

**A.  Spectrum's Failure to Remit Margin Deficit**

19.    Under the Warehouse Purchase Agreement, a Mortgage Loan

purchased by the Trust is to be further conveyed or sold to a takeout investor ("Takeout

Investor"), identified by Spectrum in a transaction arranged by Spectrum, within 45 days

after the Closing Date of the Trust's purchase of such Mortgage Loan.  Such a further

conveyance is referred to as a Settlement, taking place on a Settlement Date.

20.    Pursuant to § 12.04 of the Warehouse Purchase Agreement, if a

Settlement Date for any Mortgage Loan has not occurred within 45 days after the Closing

Date for that Mortgage Loan, a "Required Sale Event" has occurred with respect to that

Mortgage Loan.  Upon the occurrence of a Required Sale Event, TWM may cause the

Trust to sell the Mortgage Loans for which a required Sale Event has occurred.

21.    With respect to the following four (4) Mortgage Loans (the

"Required Sale Mortgage Loans"), Spectrum failed to arrange a Settlement Date within

45 days after the related Closing Date:

Smith - No. 303714750

Smith - No. 303714751

5

Turner - No. 303714752

Thomson - No 303727043

22.     Commencing in May 2007, TWM as Program Administrator sent notices to Spectrum concerning its failure to arrange Settlement Dates for the Required Sale Mortgage Loans within 45 days after the related Closing Dates and stated that, because of Spectrum's failure to arrange Settlement Dates for the Required Sale Mortgage Loans, TWM would need to sell the Required Sale Mortgage Loans.

23.     Spectrum failed to take action in response to the notices TWM sent Spectrum concerning the Required Sale Mortgage Loans.

24.     On or about June 1, 2007, pursuant to § 12.04 of the Warehouse Purchase Agreement, the Trust, through TWM, arranged to sell the Required Sale Mortgage Loans, as a result of which the Trust incurred an economic loss in the amount of the difference between the Adjusted Purchase Price of the Required Sale Margin Loans and the Market Value of those loans (such loss, the "Margin Deficit"). The Margin Deficit resulting from the sale of the Required Sale Margin Loans was $262,699.93.

25.     Section 12.03 of the Warehouse Purchase Agreement requires Spectrum, upon request, to remit to the Trust the amount of the Margin Deficit.

26.     On or about June 1, 2007, pursuant to § 12.03 of the Warehouse Purchase Agreement, TWM sent Spectrum notice requesting it to transfer to the Trust the Margin Deficit, in the amount of $262,699.93.

27.     In breach of the Warehouse Purchase Agreement, Spectrum failed to remit the Margin Deficit of $262,699.93 to the Trust.

6

**B.** **Spectrum's Failure to Transfer Servicing Rights and Documents**

28.     In Article II of the Warehouse Purchase Agreement, including but not limited to § 2.03 thereof, Spectrum agreed upon its sale of Mortgage Loans to "transfer[], assign[] and deliver[] to the Purchaser [the Trust] or its designee the right to service each such Mortgage Loan sold by it [Spectrum]," including, in connection with such transfer of servicing rights, releasing and delivering to the Trust or its designee all servicing rights, files and documents related to such Mortgage Loans.

29.     On or about June 1, 2007, TWM on behalf of the Trust requested Spectrum to release, transfer and deliver to the Trust's designee, Specialized Loan Servicing, LLC ("SLS"), all servicing rights, files and documents related to the Required Sale Mortgage Loans, for the purpose of effectuating the continued servicing thereof.

30.     In breach of the Warehouse Purchase Agreement, Spectrum failed to release, transfer and deliver to SLS as the Trust's designee all servicing rights, files and documents related to the Required Sale Mortgage Loans.

31.     The Trust has incurred, and continues to incur, damages as a result of Spectrum's failure to release, transfer and deliver to SLS as the Trust's designee all servicing rights, files and documents related to the Required Sale Mortgage Loans.

**Spectrum's Failure to Perform Its Obligations**
**Under the Loan Purchase Agreement**

32.     On or about January 10, 2005, TA and Spectrum entered into a Seller's Purchase, Warranties and Interim Servicing Agreement (the "Loan Purchase Agreement") pursuant to which Spectrum and TA contracted for Spectrum to sell to TA certain Mortgage Loans (as defined in the Loan Purchase Agreement), subject to the terms and conditions in the Loan Purchase Agreement.  In § 12.18 of the Loan Purchase

Agreement, Spectrum consented to the jurisdiction and venue of this Court as to any claim relating to the Loan Purchase Agreement.

33.     In the Loan Purchase Agreement, TA and Spectrum contracted for Spectrum to sell to TA certain Mortgage Loans (as defined in the Loan Purchase Agreement), subject to the terms and conditions in the Loan Purchase Agreement.

34.     Pursuant to the Loan Purchase Agreement, TA purchased from Spectrum a substantial number of Mortgage Loans.  TA has fully performed all its obligations under and relating to the Loan Purchase Agreement.

**A.  Spectrum's Failure to Repurchase EPD Loans**

35.     Pursuant to § 3.05 of the Loan Purchase Agreement, entitled "Repurchase of Mortgage Loans With Early Payment Defaults," Spectrum agreed to repurchase from TA certain Mortgage Loans ("Early Payment Default Loans" or "EPD Loans") as to which there occurred payment defaults within three months after the Closing Date (as defined in the Loan Purchase Agreement) for such Mortgage Loans. Section 3.05 of the Loan Purchase Agreement provides as follows:

> If (a) a Mortgagor is thirty (30) days or more delinquent with respect to any of the first three (3) Monthly Payments due on the related Mortgage Loan immediately following the applicable Closing Date or (b) a Mortgage Loan is in bankruptcy or litigation within the first three (3) months immediately following the applicable Closing Date, the Seller [Spectrum], at the Purchaser's [TA's] option, shall promptly repurchase such Mortgage Loan from the Purchaser within five (5) Business Days of receipt of written notice from the Purchaser, in accordance with the procedures set forth in Section 3.03 hereof, however, any such repurchase shall be made at the Repurchase Price.

36.    Thus, the Loan Purchase Agreement expressly and unambiguously gave TA the right to cause Spectrum to repurchase, and imposed on Spectrum the obligation to repurchase, at the Repurchase Price, any Early Payment Default Loans as to which TA requested repurchase.

37.    Certain of the Mortgage Loans that TA purchased from Spectrum pursuant to the Loan Purchase Agreement, which Mortgage Loans are identified on Exhibit A hereto, were Early Payment Default Loans, that is, Mortgage Loans as to which (a) a Mortgagor (as defined in the Purchase Agreement) was thirty (30) days or more delinquent with respect to any of the first three (3) Monthly Payments due on the related Mortgage Loan immediately following the applicable Closing Date or (b) the Mortgage Loan was in bankruptcy or litigation within the first three (3) months immediately following the applicable Closing Date.

38.    The Mortgage Loans listed on Exhibit A hereto are all Early Payment Default Loans as defined in the Loan Purchase Agreement.

39.    On several occasions, continuing through June 1, 2007, TA gave Spectrum written notice of such Early Payment Default Loans and exercised TA's option to require Spectrum to repurchase such Early Payment Default Loans, all in accordance with the terms of the Loan Purchase Agreement.

40.    TA stood ready, willing and able, at all relevant times, to reconvey the Mortgage Loans on Exhibit A to Spectrum.

41.    Spectrum did not repurchase the Early Payment Default Loans listed on Exhibit A hereto as requested by TA. Therefore, Spectrum is in breach of its repurchase obligations under the Purchase Agreement.

9

B. **Spectrum's Failure to Remit PIF Payments**

42.    Spectrum is also in breach of its obligations pursuant to § 2.02 of the Loan Purchase Agreement.

43.    Section 2.02 of the Loan Purchase Agreement provides:

> With respect to each Mortgage Loan, the Purchaser [TA] shall be entitled to (1) the principal portion of all Monthly Payments due after the Cut-off Date, (2) all other recoveries of principal collected on or after the Cut-off Date (provided, however, that the principal portion of all Monthly Payments due on or before the Cut-off Date and collected by the Servicer or any successor servicer after the Cut-off Date shall belong to the Seller), and (3) all payments of interest on the Mortgage Loans (minus that portion of any such payment which is allocable to the period prior to the Cut-off Date). [Emphasis added.]

44.    After the Cut-Off Date (as defined in the Loan Purchase Agreement) for two Mortgage Loans, referred to as the Cardwell no. 100078791 and the Cardwell no. 100082377 Mortgage Loans (the "PIF Mortgage Loans"), the PIF Mortgage Loans were paid in full ("PIF") by the borrower thereon.  However, the borrower mistakenly sent the payoff payments on the PIF Mortgage Loans, in an aggregate amount not less than $1,222,129.01 (the "PIF Payments"), to Spectrum, which was no longer the owner of the PIF Mortgage Loans after the Cut-Off Date, rather than to TA.

45.    The  PIF Payments received by Spectrum on the PIF Mortgage Loans after the Cut-Off Date did not belong to Spectrum because TA, as Purchaser, owned the PIF Mortgage Loans and was expressly entitled to the PIF Payments under § 2.02 of the Loan Purchase Agreement.

46.    On several occasions, continuing through June 4, 2007, TA demanded that Spectrum forward the PIF Payments to TA as required by §§ 2.02 and 7.01 of the Loan Purchase Agreement, and applicable law.

47.    Spectrum has failed and refused to forward the PIF Payments to TA, in breach of Spectrum's obligations to TA.

## AS AND FOR A FIRST CAUSE OF ACTION
### (BY TWM AGAINST SPECTRUM FOR BREACH OF CONTRACT – DAMAGES FOR FAILURE TO REMIT MARGIN DEFICIT)

48.    Plaintiffs repeat and reallege the allegations of paragraphs 1 - 47, above, as if fully set forth herein.

49.    Spectrum's failure to remit to TWM, for the benefit of the Trust, the Margin Deficit of $262,699.93 was and is a breach of the Warehouse Purchase Agreement by Spectrum.

50.    The Trust is entitled to be put in the position that it would have been in had Spectrum performed its contractual obligations.

51.    Accordingly, TWM, in its capacity as Program Administrator and assignee of the Trust, is entitled to a money judgment in favor of TWM and against Spectrum in the amount of $262,699.93, plus interest at the New York statutory rate of 9% from the date of breach to the date of judgment.

## AS AND FOR A SECOND CAUSE OF ACTION
### (BY TWM AGAINST SPECTRUM FOR BREACH OF CONTRACT – INJUNCTION TO TRANSFER SERVICING RIGHTS AND DOCUMENTS)

52.    Plaintiffs repeat and reallege the allegations of paragraphs 1 - 51, above, as if fully set forth herein.

53.    Spectrum's failure to release, transfer and deliver to the Trust's designee, SLS, all servicing rights, files and documents related to the Required Sale Mortgage Loans, for the purpose of effectuating the continued servicing thereof, was and is a breach of the Warehouse Purchase Agreement.

54.    The Trust is entitled to be put in the position that it would have been in had Spectrum performed its contractual obligations.

55.    The Trust has no adequate remedy at law with respect to Spectrum's failure to release, transfer and deliver to the Trust's designee, SLS, all servicing rights, files and documents related to the Required Sale Mortgage Loans.

56.    To enforce the terms of the Warehouse Purchase Agreement, TWM, in its capacity as Program Administrator and assignee of the Trust, is entitled to a mandatory injunction directing specific performance by Spectrum of its obligations under the Warehouse Purchase Agreement to release, transfer and deliver to the Trust's designee, SLS, all servicing rights, files and documents related to the Required Sale Mortgage Loans, for the purpose of effectuating the continued servicing thereof.

### AS AND FOR A THIRD CAUSE OF ACTION
### (BY TWM AGAINST SPECTRUM FOR BREACH OF CONTRACT – DAMAGES FOR FAILURE TO TRANSFER SERVICING RIGHTS AND DOCUMENTS)

57.    Plaintiffs repeat and reallege the allegations of paragraphs 1 - 56, above, as if fully set forth herein.

58.    Spectrum's failure to release, transfer and deliver to the Trust's designee, SLS, all servicing rights, files and documents related to the Required Sale Mortgage Loans, for the purpose of effectuating the continued servicing thereof, was and is a breach of the Warehouse Purchase Agreement that, in addition to requiring injunctive relief as set forth above, has damaged the Trust in an amount that cannot be determined at present and includes, but is not limited to, the costs and expenses of this action, including but not limited to reasonable attorneys' fees.

59.    In § 9.01 of the Warehouse Purchase Agreement, Spectrum agreed to indemnify the Trust and TWM against such damages, as follows:

> The Seller [Spectrum] agrees to indemnify on demand the Purchaser [the Trust], the Program Administrator [TWM] and their affiliates, trustees, agents, successors and assignees, and hold them harmless against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that they may sustain in any way related to (i) the failure of the Seller to observe and perform its duties, obligations, and covenants in strict compliance with the terms of this Agreement, . . . . [Emphasis added.]

60.    Accordingly, TWM, in its capacity as Program Administrator and assignee of the Trust, is entitled to a money judgment in favor of TWM and against Spectrum in the amount to be determined, including but not limited to the costs and expenses of this action, including reasonable attorneys' fees, plus interest at the New York statutory rate of 9% from the date of breach to the date of judgment.

## AS AND FOR A FOURTH CAUSE OF ACTION
## (BY TWM AGAINST CRAIG SR. ON GUARANTY)

61.    Plaintiffs repeat and reallege the allegations of paragraphs 1 - 60, above, as if fully set forth herein.

62.    Pursuant to the Craig Sr. Guaranty, Craig Sr. unconditionally and irrevocably guaranteed to the Trust in an unlimited amount the due and punctual payment and/or performance of all of Spectrum's obligations under the Warehouse Purchase Agreement.

63.    Spectrum is obligated to the Trust under the Warehouse Purchase Agreement as set forth above.

64.    A money judgment should be entered against Craig Sr. and in favor of TWM on behalf of the Trust in the aggregate amount of all amounts awarded pursuant to the First and Third Causes of Action, above.

## AS AND FOR A FIFTH CAUSE OF ACTION
## (BY TWM AGAINST CRAIG JR. ON GUARANTY)

65.    Plaintiffs repeat and reallege the allegations of paragraphs 1 - 64, above, as if fully set forth herein.

66.    Pursuant to the Craig Jr. Guaranty, Craig Jr. unconditionally and irrevocably guaranteed to the Trust in an unlimited amount the due and punctual payment and/or performance of all of Spectrum's obligations under the Warehouse Purchase Agreement.

67.    Spectrum is obligated to the Trust under the Warehouse Purchase Agreement as set forth above.

68.    A money judgment should be entered against Craig Jr. and in favor of TWM on behalf of the Trust in the aggregate amount of all amounts awarded pursuant to the First and Third Causes of Action, above.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (BY TA AGAINST ALL DEFENDANTS FOR CONVERSION)

69.    Plaintiffs repeat and reallege the allegations of paragraphs 1 - 68, above, as if fully set forth herein.

70.    Spectrum's unlawful retention of the PIF Payments is an intentional and unauthorized exercise of control over property belonging to another, interfering with the lawful right of possession of TA in the PIF Payments. TA has a possessory right and interest in the PIF Payments and Spectrum's continued dominion

over the PIF Payments and interference with TA's possessory right and interest is in derogation of TA's lawful right and interest.

71.    As such, Spectrum's conduct with respect to the PIF Payments constitutes the tort of conversion.

72.    On information and belief, Craig Sr. and Craig Jr., as the responsible officers of Spectrum, have caused Spectrum to engage in such tortious conduct towards TA with full awareness that such conduct is tortious and intending to interfere with TA's lawful right of possession in the PIF Payments.

73.    Craig Sr. and Craig Jr. participated in the conversion complained of, had full knowledge of such conversion and failed to take any steps to prevent or correct the unlawful conversion of the PIF Payments.

74.    Accordingly, Spectrum, Craig Sr. and Craig Jr. are liable in damages to TA, jointly and severally, in an amount not less than $1,222,129.01, plus interest at the statutory rate of 9% from the date Spectrum first exercised dominion and control over the PIF Payments to the date of judgment.

75.    A money judgment should be entered in favor of TA and against Spectrum, Craig Sr. and Craig Jr., jointly and severally, in an amount not less than $1,222,129.01, plus interest at the statutory rate of 9% from the date Spectrum first exercised dominion and control over the PIF Payments to the date of judgment.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## (BY TA AGAINST SPECTRUM FOR MONEY HAD AND RECEIVED)

76.    Plaintiffs repeat and reallege the allegations of paragraphs 1 - 75, above, as if fully set forth herein.

15

77.    As set forth above, Spectrum received and retains the PIF Payments, which are money belonging to TA.

78.    Spectrum benefited and continues to benefit from holding the PIF Payments notwithstanding that they belong to TA.

79.    Under principles of equity and good conscience, Spectrum should not be permitted to keep the PIF Payments, which do not belong to it.

80.    Accordingly, judgment should be entered in favor of TA and against Spectrum for money had and received, in an amount not less than $1,222,129.01, plus interest at the statutory rate of 9% from the date Spectrum first exercised dominion and control over the PIF Payments to the date of judgment.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## (BY TA AGAINST ALL SPECTRUM FOR UNJUST ENRICHMENT)

81.    Plaintiffs repeat and reallage the allegations of paragraphs 1 - 80, above, as if fully set forth herein.

82.    As set forth above, Spectrum received and retains the PIF Payments, which are money belonging to TA.

83.    Spectrum was unjustly enriched and continues to be unjustly enriched from holding the PIF Payments notwithstanding that they belong to TA.

84.    Under principles of equity and good conscience, Spectrum should not be permitted to be unjustly enriched by keeping the PIF Payments, which do not belong to it.

85.    Accordingly, judgment should be entered in favor of TA and against Spectrum for unjust enrichment, in an amount not less than $1,222,129.01, plus

interest at the statutory rate of 9% from the date Spectrum first exercised dominion and control over the PIF Payments to the date of judgment.

## AS AND FOR A NINTH CAUSE OF ACTION
### (BY TA AGAINST ALL DEFENDANTS FOR AN ACCOUNTING)

86.    Plaintiffs repeat and reallege the allegations of paragraphs 1 - 85, above, as if fully set forth herein.

87.    Defendants hold PIF Payments in constructive trust for TA yet, as set forth above, are acting wrongfully with respect to the PIF Payments.

88.    In view of the circumstances set forth above, equity requires that defendants be ordered to account to TA for the PIF Payments.

89.    TA has no adequate remedy at law with respect to defendants' wrongful conversion of the PIF Payments and an accounting is necessary for the purpose of affording full and complete relief to TA.

90.    Moreover, on information and belief, prior to the contractual defaults set forth above, Craig Sr. and Craig Jr., as responsible officers of Spectrum, have caused Spectrum to become insolvent, in that Spectrum's liabilities, including its contingent liabilities by reason of its repurchase obligations as to the EPD Mortgage Loans, exceeded its assets. From that point forward, Spectrum sold Mortgage Loans to TA knowing that Spectrum was unable to perform its repurchase obligations to TA. During the time of Spectrum's insolvency, under both Delaware and New York law, Craig Sr. and Craig Jr., as officers and directors of Spectrum, owed fiduciary duties to TA as creditor of an insolvent corporation. As fiduciaries to TA, defendants must be required to account for the PIF Payments they wrongfully converted from TA.

17

91.     Accordingly, an order should be entered compelling defendants to account for the PIF Payments and to remit the proceeds thereof to TA.

## AS AND FOR A TENTH CAUSE OF ACTION
### (BY TA AGAINST SPECTRUM – SPECIFIC PERFORMANCE OF OBLIGATION TO REPURCHASE EPD MORTGAGE LOANS)

92.     Plaintiffs repeat and reallege the allegations of paragraphs 1 - 91, above, as if fully set forth herein.

93.     Spectrum's failure to repurchase the EPD Mortgage Loans listed on Exhibit A hereto was a breach of the Purchase Agreement.

94.     To enforce the terms of the Purchase Agreement and provide TA with the benefit of its contract with Spectrum, TA is entitled to specific performance by Spectrum of its obligations to repurchase, at the contractual Repurchase Price, the EPD Mortgage Loans listed on Exhibit A hereto.

95.     TA has no adequate remedy at law with respect to Spectrum's failure to repurchase the referenced EPD Mortgage Loans.  Money damages in an uncertain amount at an uncertain time are insufficient to compensate TA for Spectrum's breach of contract and inadequate to protect TA's expectation interest in Spectrum's performance of the Purchase Agreement.

96.     Accordingly, the Court should enter judgment directing Spectrum to repurchase the EPD Mortgage Loans listed on Exhibit A hereto at their respective Repurchase Prices as defined in the Purchase Agreement.

## AS AND FOR A ELEVENTH AND ALTERNATIVE CAUSE OF ACTION
### (BY TA AGAINST SPECTRUM – DAMAGES FOR FAILURE TO REPURCHASE EPD MORTGAGE LOANS)

97.     Plaintiffs repeat and reallege the allegations of paragraphs 1 - 96, above, as if fully set forth herein.

18

98.    Should the Court determine that specific performance is unavailable to TA with respect to Spectrum's obligation to repurchase the EPD Mortgage Loans, the Court should award damages in favor of TA and against Spectrum for breach of § 3.05 of the Purchase Agreement.

99.    TA is entitled, by means of an award of damages, to be put in the same position economically that it would have been in had Spectrum performed its repurchase obligations under the Purchase Agreement.

100.    In addition, pursuant to § 8.01 of the Purchase Agreement, Spectrum expressly and unambiguously agreed to indemnify TA, and hold them harmless "against any and all . . . losses [and] damages . . . that Purchaser [TA] may sustain in any way related to (i) the failure of the Seller [Spectrum] to observe and perform its duties, obligations, and covenants in strict compliance with the terms of this Agreement . . . ," which included § 3.05 of the Purchase Agreement.

101.    The aggregate Repurchase Price due and owing to TA for the EPD Mortgage Loans, as of June 1, 2007, was $11,927,711, no part of which has been paid despite due demand therefore.

102.    The Court should enter a money judgment in favor of TA and against Spectrum in the amount of $11,927,711, plus interest at the statutory rate of 9% from June 1, 2007 until date of judgment.

## AS AND FOR A TWELFTH CAUSE OF ACTION (BY TA AGAINST SPECTRUM – INDEMNIFICATION FOR LEGAL FEES AND RELATED COSTS)

103.    Plaintiffs repeat and reallege the allegations of paragraphs 1 – 102, above, as if fully set forth herein.

19

104.    Pursuant to § 9.01 of the Purchase Agreement, Spectrum expressly and unambiguously agreed to indemnify and hold TA harmless "against any and all . . . losses, damages, . . . legal fees and related costs . . . and any other costs, fees and expenses that they may sustain in any way related to (i) the failure of the Seller [Spectrum] to observe and perform its duties, obligations, and covenants in strict compliance with the terms of this Agreement . . . ."

105.    Spectrum's indemnity obligation expressly includes the legal fees and court costs, and all other costs, fees and expenses, that TA has incurred, is incurring and will incur in connection with Spectrum's failure to observe and perform its obligations under the Loan Purchase Agreement as set forth above, including but not limited to all attorneys' fees, court costs and other expenses incurred in this action.

106.    Spectrum therefore is liable to TA for all TA's legal fees and related costs, and all other costs, fees and expenses that the TA has incurred, is incurring and will incur in connection with Spectrum's failure to observe and perform its obligations under the Loan Purchase Agreement, plus interest at the applicable statutory rate in New York of 9% per annum from the date each such damage or cost was incurred to the date of judgment in this action.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants as follows:

(i)    on the First Cause of Action, awarding TWM, in its capacity as Program Administrator and assignee of the Trust, against Spectrum an amount to be determined but not less than $262,699.93, plus interest at the applicable statutory rate in New York of 9% per

20

annum from the date of each breach of contract to the date of

judgment in this action;

(ii)    on the Second Cause of Action, awarding TWM, in its capacity as

Program Administrator and assignee of the Trust, against Spectrum

a mandatory injunction directing specific performance by

Spectrum of Spectrum's obligations under the Warehouse

Purchase Agreement to release, transfer and deliver to the Trust's

designee, SLS, all servicing rights, files and documents related to

the Required Sale Mortgage Loans;

(iii)    on the Third Cause of Action, awarding TWM, in its capacity as

Program Administrator and assignee of the Trust, against Spectrum

a money judgment in the amount to be determined, plus costs and

expenses in this action, including reasonable attorneys' fees, and

interest at the applicable statutory rate in New York of 9% per

annum from the date of breach to the date of judgment in this

action;

(iv)    on the Fourth Cause of Action, awarding TWM, on behalf of the

Trust, against Craig Sr. a money judgment in the aggregate

amounts awarded pursuant to the First and Third Causes of Action;

(v)    on the Fifth Cause of Action, awarding TWM, on behalf of the

Trust, against Craig Jr. a money judgment in the aggregate

amounts awarded pursuant to the First and Third Causes of Action;

21

(vi)   on the Sixth Cause of Action, awarding TA against Spectrum, Craig Sr. and Craig Jr., jointly and severally, an amount to be determined but not less than $1,222,129.01, plus interest at the statutory rate of 9% from the date Spectrum first exercised dominion and control over the PIF Payments to the date of judgment;

(vii)  on the Seventh Cause of Action, awarding TA against Spectrum for money had and received by Spectrum an amount to be determined but not less than $1,222,129.01, plus interest at the statutory rate of 9% from the date Spectrum first exercised dominion and control over the PIF Payments to the date of judgment;

(viii) on the Eighth Cause of Action, awarding TA against Spectrum for money unjustly received by Spectrum an amount to be determined but not less than $1,222,129.01, plus interest at the statutory rate of 9% from the date Spectrum first unjustly exercised dominion and control over the PIF Payments to the date of judgment;

(ix)   on the Ninth Cause of Action, awarding TA against Spectrum, Craig Sr. and Craig Jr. an order compelling Spectrum, Craig Sr. and Craig Jr. to account for the PIF Payments and to remit the proceeds thereof to TA;

(x)    on the Tenth Cause of Action, awarding TA against Spectrum an order directing Spectrum to repurchase the EPD Mortgage Loans

22

listed on Exhibit A hereto at their respective Repurchase Prices as defined in the Purchase Agreement;

(xi)     on the Eleventh Cause of Action, awarding TA against Spectrum an amount to be determined but not less than $11,927,711, plus interest at the statutory rate of 9% from June 1, 2007 until date of judgment;

(xii)    on the Twelfth Cause of Action, awarding TA against Spectrum all TA's legal fees and related costs, and all other costs, fees and expenses that TA has incurred, is incurring and will incur in connection with Spectrum's failure to observe and perform its obligation to repurchase Mortgage Loans pursuant to the Loan Purchase Agreement, plus interest at the applicable statutory rate in New York of 9% per annum from the date each such damage or cost was incurred to the date of judgment in this action; and

(xiii)   granting such other or further relief as the Court may deem just and proper in the circumstances.

Dated: June 13, 2007

MILLER & WRUBEL P.C.

By: _____
Charles R. Jacob III (CJ-4143)
Haynee C. Kang (HK-9957)
250 Park Avenue
New York, New York 10177
(212) 336-3500

Attorneys for Plaintiff

**Exhibit A**



## THE WINTER GROUP

## TERWIN ADVISORS LLC

### EXHIBIT A

| loan_no | bor_name_last |
|---------|---------------|
| 100070587 | SOROKA |
| 100078382 | AHMADZAI |
| 100078908 | KOVARIK |
| 100069470 | HEMP |
| 100063825 | HARGROVE |
| 100067505 | KNUDSON |
| 100058365 | SANDOVAL |
| 100066176 | SULLIVAN |
| 100058366 | SANDOVAL |
| 100057678 | MORRIS |
| 100080173 | BATES |
| 100079474 | AHMADZAI |
| 100077450 | GUNTERMAN |
| 100079974 | BATES |
| 100080132 | FARRESS |
| 100080712 | KHANH VU |
| 100080194 | FARRESS |
| 100080016 | KHANH VU |
| 100077087 | ROCKWELL |
| 100079729 | SANCHEZ |
| 100073477 | HARRISON |
| 100075749 | HATCH |
| 100060955 | HUTCHISON |
| 100071934 | HUG |
| 100045458 | CHRISTENSEN |
| 100076288 | BANNEN |
| 100076692 | BANNEN |
| 100076771 | SANDNER |
| 100077036 | MARRIOTT |
| 100077308 | BENARDELLO |
| 100077391 | SANDNER |
| 100079448 | KOVARIK |
| 100074387 | DEGRAAF |
| 100075216 | SANDNER |
| 100075136 | SANDNER |
| 100075761 | BENARDELLO |
| 100075765 | MARRIOTT |
| 100063823 | HARGROVE |
| 100074871 | DEGRAAF |
| 100069964 | HEMP |
| 100077544 | ROCKWELL |
| 100080272 | SANCHEZ |
| 100073954 | HARRISON |
| 100074409 | LAMBERMONT |
| 100077502 | HATCH |
| 100071933 | HUG |
| 100067508 | KNUDSON |
| 100057675 | MORRIS |
| 100066179 | SULLIVAN |



## TERWIN ADVISORS LLC

| | |
|---|---|
| 100045456 | CHRISTENSEN |
| 100035494 | GOECKEL |
| 100081547 | KANIS |
| 100082377 | CARDWELL |
| 100080212 | BARRIGA |
| 303486036 | Yuriar |
| 100078791 | CARDWELL |
| 100065574 | DEPUE |
| 100054227 | BAGBY |
| 100055394 | TUNGKITKANCHAROEN |