# EXHIBIT A

**Terwin Warehouse Management LLC**
as Program Administrator,

**Terwin Mortgage Warehouse Trust II, Series XVI,**
**a series of Terwin Mortgage Warehouse Trust II,**
**a Delaware statutory trust**
as Purchaser

and

**Spectrum Financial Group, Inc.**
as Seller and Servicer

SELLER'S PURCHASE, WARRANTIES AND SERVICING AGREEMENT
Dated as of June 17, 2005

## TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ...........................................................................................2

    Section 1.01   Defined Terms...............................................................................2

ARTICLE II SERVICING OF MORTGAGE LOANS; RECORD TITLE AND POSSESSION
    OF MORTGAGE FILES; BOOKS AND RECORDS; CUSTODIAL AGREEMENT;
DELIVERY OF MORTGAGE LOAN DOCUMENTS ............................................17

    Section 2.01   Agreement to Purchase. ...............................................................17
    Section 2.02   Purchase Price. ............................................................................19
    Section 2.03   Servicing of Mortgage Loans.......................................................19
    Section 2.04   Record Title and Possession of Mortgage Files; Maintenance of Servicing
                 Files. ......................................................................................20
    Section 2.05   Books and Records.......................................................................20
    Section 2.06   Transfer of Mortgage Loans. .......................................................21
    Section 2.07   Delivery of Mortgage Loan Documents. ......................................21
    Section 2.08   Quality Control Procedures..........................................................22
    Section 2.09   Closing. ........................................................................................22
    Section 2.10   Delivery of Documents; Initial Purchase of Mortgage Loans. ......23
    Section 2.11   Fees. .............................................................................................25
    Section 2.12   Duties with Respect to Forward Commitments. ...........................25

ARTICLE III REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE SELLER
AND THE SERVICER; REPURCHASE; REVIEW OF MORTGAGE LOANS ......................27

    Section 3.01   Representations and Warranties of the Seller and the Servicer. .......27
    Section 3.02   Representations and Warranties as to Individual Mortgage Loans..................30
    Section 3.03   Repurchase. ..................................................................................41
    Section 3.04   RESERVED. .................................................................................43
    Section 3.05   Repurchase of Mortgage Loans With Early Payment Defaults. .......43
    Section 3.06   RESERVED. .................................................................................43
    Section 3.07   Covenants of Seller. .....................................................................43
    Section 3.08   Payment.......................................................................................48
    Section 3.09   Seller Resolutions. .......................................................................49
    Section 3.10   Remedies......................................................................................49

ARTICLE IV SERVICING OF THE MORTGAGE LOANS DURING THE INTERIM
SERVICING PERIOD ..................................................................................................50

    Section 4.01   RESERVED .................................................................................50
    Section 4.02   Custodial Account........................................................................50
    Section 4.03   Establishment of Escrow Accounts; Deposits in Accounts. ............51
    Section 4.04   Permitted Withdrawals From the Escrow Account..........................52

ARTICLE V ACCOUNTS ........................................................................................53

    Section 5.01    Funding. ...........................................................................53
    Section 5.02    Top-Up Account. ...............................................................53
    Section 5.03    Withdrawals From the Top-Up Account. .........................54
    Section 5.04    Seller Funding Account. ....................................................54
    Section 5.05    Withdrawals From the Seller Funding Account. ..............55
    Section 5.06    Seller Settlement Account...................................................55
    Section 5.07    Withdrawals From the Seller Settlement Account...........56
    Section 5.08    Security Interest. ...............................................................56

ARTICLE VI PAYMENTS TO THE PURCHASER..............................................58

    Section 6.01    Distributions.......................................................................58
    Section 6.02    Statements to the Purchaser. .............................................58
    Section 6.03    [RESERVED] ....................................................................59
    Section 6.04    Liquidation Reports...........................................................59

ARTICLE VII RESERVED ...................................................................................60

ARTICLE VIII SELLER TRIGGER EVENT .......................................................61

    Section 8.01    Seller Trigger Events ........................................................61

ARTICLE IX THE SELLER AND THE SERVICER.............................................63

    Section 9.01    Indemnification; Third Party Claims. ...............................63
    Section 9.02    Merger or Consolidation of the Seller or the Servicer. ....63
    Section 9.03    Limitation on Liability of the Seller and Others. ..............64

ARTICLE X DEFAULT ........................................................................................65

    Section 10.01  Events of Default. .............................................................65
    Section 10.02  Waiver of Defaults. ..........................................................67

ARTICLE XI TERMINATION ..............................................................................68

    Section 11.01  Termination. ......................................................................68
    Section 11.02  Termination. ......................................................................68

ARTICLE XII RECONSTITUTION AND RESALE OF MORTGAGE LOANS; VALUATION DEFICIENCY ................................................................................................69

    Section 12.01  RESERVED.......................................................................69
    Section 12.02  Sale of Mortgage Loans to Takeout Investors. ................69
    Section 12.03  Market Value.....................................................................70
    Section 12.04  Required Sale Event. .........................................................70
    Section 12.05  RESERVED. .....................................................................71

Section 12.06  Intent of Parties; Security Interest....................................................71

ARTICLE XIII MISCELLANEOUS PROVISIONS .................................................73

Section 13.01  Successor to the Servicer. ..............................................................73
Section 13.02  Amendment...................................................................................74
Section 13.03  Recordation of Agreement. ...........................................................74
Section 13.04  Governing Law. ............................................................................74
Section 13.05  Notices. ........................................................................................74
Section 13.06  Severability of Provisions. ............................................................74
Section 13.07  Exhibits. .......................................................................................75
Section 13.08  General Interpretive Principles. ....................................................75
Section 13.09  Reproduction of Documents. .........................................................76
Section 13.10  Confidentiality of Information. ......................................................76
Section 13.11  Authority of Program Administrator to Direct. ..............................76
Section 13.12  Assignment by Purchaser...............................................................76
Section 13.13  No Partnership...............................................................................77
Section 13.14  Execution; Successors and Assigns. ..............................................77
Section 13.15  Entire Agreement. .........................................................................77
Section 13.16  No Solicitation. .............................................................................77
Section 13.17  MERS............................................................................................77
Section 13.18  Time of the Essence.  ....................................................................78
Section 13.19  Power of Attorney.  .......................................................................78

EXHIBITS
|   |   |
|---|---|
| A | Contents of Mortgage File |
| B | Required Data Fields |
| C | Reserved |
| D | Reserved |
| E | Form of Monthly Servicing Report |
| F | Reserved |
| G | Closing Agent Agreement |
| H | Servicing Provisions |
| I | Seller Specific Provisions |
| J | Administrative Costs |
| K | Submission Package Documents |
| L | Escrow Instruction Letter |
| M | Insured Closing Protection Letter |
| N | Warehouse Lender Release |
| O | Authorized Representatives of Seller |

This is a Seller's Purchase, Warranties and Servicing Agreement, dated as of June 17, 2005 between Terwin Mortgage Warehouse Trust II, Series XVI, a series of Terwin Mortgage Warehouse Trust II, a Delaware statutory trust, ("Purchaser"), Terwin Warehouse Management LLC, a Delaware limited liability company, ("Program Administrator"), and Spectrum Financial Group, Inc., an Arizona corporation ("Seller") and as servicer (in such capacity, the "Servicer").

## W I T N E S S E T H :

WHEREAS, the Purchaser agrees to purchase from the Seller and the Seller agrees to sell to the Purchaser certain Mortgage Loans, together with the servicing rights associated with such Mortgage Loans, from time to time, pursuant to the terms of this Agreement.

WHEREAS, each of the Mortgage Loans is secured by a mortgage, deed of trust or other security instrument creating a first or second lien on a residential dwelling located in the jurisdiction indicated on the Mortgage Loan Schedule, which is, or will be, annexed hereto as Exhibit F. The Mortgage Loans as described herein shall be delivered as single loans or in groups of whole loans (each delivery, a "Mortgage Loan Package") on various dates as provided herein (each, a "Closing Date"); and

WHEREAS, the parties wish to prescribe the representations and warranties of the Seller with respect to itself and the Mortgage Loans and the management, interim servicing, transfer and control of the Mortgage Loans by the Servicer; and

NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

ARTICLE I
DEFINITIONS

Section 1.01          Defined Terms.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the following meaning specified in this Article.

Accepted Servicing Practices:  With respect to any Mortgage Loan, those mortgage servicing practices (including collection procedures) of prudent mortgage banking institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, and which are in accordance with Fannie Mae servicing practices and procedures, for MBS pool mortgages, as defined in the Fannie Mae Guides (which by their terms incorporate future updates).

Additional Mortgage Loans:  Has the meaning set forth in Section 12.03.

Adjustable Rate Mortgage Loan:  Any Mortgage Loan as to which the related Mortgage Note provides for periodic adjustments of the Mortgage Rate applicable thereto.

Adjusted Purchase Price:  As of any date of determination in respect of any Purchase, the excess of (i) the Purchase Price with respect thereto over (ii) all payments of principal actually received by Purchaser in respect of the related Mortgage Loans on or prior to such date (which shall not include any scheduled principal payments on the related Mortgage Loans that are retained by the Seller hereunder).

Adjusted Takeout Proceeds:  With respect to any Mortgage Loan, means the Takeout Proceeds less any Administrative Costs incurred in connection with such Mortgage Loan.

Adjustment Date:  With respect to each Adjustable Rate Mortgage Loan, the date set forth in the related Mortgage Note on which the Mortgage Interest Rate on such Mortgage Loan is adjusted in accordance with the terms of such Mortgage Note.

Administrative Costs:  The fees, charges and expenses listed on Exhibit J.

Advance Submission Documents:  With respect to any Mortgage Loan, the Closing Instruction Letter, the Data File, the Insured Closing Protection Letter, evidence of closing attorney errors and omissions insurance, the Closing Agent Agreement (Exhibit G), the Forward Commitment and any other documents the Program Administrator may request in its sole discretion.

Affiliate:  With respect to any Person, any other Person directly or indirectly controlling, controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person, means the power to direct the management and policies of such Person, directly or indirectly,

2

whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Aggregate Adjusted Purchase Price:   As of any date of determination, the aggregate of the Adjusted Purchase Prices of Mortgage Loans currently held by Purchaser hereunder.

Agreement:    This Seller's Purchase, Warranties and Servicing Agreement including all exhibits hereto, amendments hereof and supplements hereto.

Applicable Percentage:  Has the meaning set forth on Exhibit I.

Applicable Rate:    With respect to any Mortgage Loan and any date of determination, the Applicable Rate shall equal LIBOR plus the amount set forth on Exhibit I hereto.

Appraised Value:  With respect to any Mortgaged Property, the lesser of (i) the value thereof as determined by an appraisal made for the originator of the Mortgage Loan at the time of origination of the Mortgage Loan by an appraiser meeting the standards set forth in the applicable Underwriting Standards, and (ii) the purchase price paid for the related Mortgaged Property by the Mortgagor with the proceeds of the Mortgage Loan, provided, however, in the case of a Refinanced Mortgage Loan, such value of the Mortgaged Property is based solely upon the value determined by an appraisal made for the originator of such Refinanced Mortgage Loan at the time of origination of such Refinanced Mortgage Loan by an appraiser meeting the standards set forth in the applicable Underwriting Standards.

Approved Closing Agent:  A closing agent on a list approved by the Program Administrator for closing Mortgage Loans, as such list may be modified from time to time by the Program Administrator.

Approved Takeout Investor:  A party that has executed a Forward Commitment, which party is on the list of Takeout Investors set forth on Exhibit I hereto.

Assignment:  An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the transfer of the Mortgage.

Available Amount:  As of any date of determination, the Available Amount set forth on Exhibit I hereto, less the Aggregate Adjusted Purchase Price on such date.

BIF:  The Bank Insurance Fund, or any successor thereto.

Business Day:  Any day other than (i) a Saturday or a Sunday, or (ii) a legal holiday in the States of Maryland, Delaware or New York, or (iii) a day on which banks in the States of Maryland, Delaware or New York are authorized or obligated by law or executive order to be closed.

Closing Agent Funding:  A Mortgage Loan that is being closed with the wire

being sent directly to the related Approved Closing Agent. The percentage of Closing Agent Funding Mortgage Loans permitted to be purchased pursuant to this Agreement is set forth on Exhibit I hereto.

Closing Date: With respect to the Mortgage Loans listed on the related Mortgage Loan Schedule with respect to the related Mortgage Loan Package, means the date of payment by Purchaser to Seller of the Purchase Price.

Code: The Internal Revenue Code of 1986, as the same may be amended from time to time (or any successor statute thereto).

Commitment Fee: The amount set forth on Exhibit I.

Condemnation Proceeds: All awards or settlements in respect of a Mortgaged Property, whether permanent or temporary, partial or entire, by exercise of the power of eminent domain or condemnation, to the extent not required to be released to a Mortgagor in accordance with the terms of the related Mortgage Loan Documents.

Convertible Mortgage Loan: Any Adjustable Rate Mortgage Loan as to which the related Mortgage Note permits the Mortgagor to convert the Mortgage Interest Rate on such Mortgage Loan to a fixed Mortgage Interest Rate.

Co-op Lease: With respect to a Co-op Loan, the lease with respect to a dwelling unit occupied by the Mortgagor and relating to the stock allocated to the related dwelling unit.

Co-op Loan: A Mortgage Loan secured by the pledge of stock allocated to a dwelling unit in a residential cooperative housing corporation and a collateral assignment of the related Co-op Lease.

Co-op Stock: With respect to a Co-op Loan, the single outstanding class of stock, partnership interest or other ownership instrument in the related residential cooperative housing corporation.

Correspondent: A Person who has agreed to sell Mortgage Loans to the Series Trust or any series thereof under a Correspondent Purchase Agreement.

Correspondent Purchase Agreement: Any of the Seller's Purchase, Warranties and Servicing Agreements entered into among the Program Administrator, the Series Trust or the applicable series thereof and the related Correspondent, as the same may be amended, supplemented, restated or otherwise modified from time to time.

Correspondent Ramp up Period: As defined in Exhibit I.

Credit Score: The credit score for each Mortgage Loan shall be calculated using a minimum of two credit bureau scores obtained at origination or such other time by the Seller. If two credit bureau scores are obtained, the Credit Score will be the lower score. If three credit bureau scores are obtained, the Credit Score will be the middle of the three. When there is more

than one applicant, the lowest of the applicants' Credit Scores will be used. There is only one (1) score for any loan regardless of the number of borrowers and/or applicants.

Custodial Account:  Each separate demand account or accounts created and maintained pursuant to Section 4.02 which shall be established as an Eligible Account.

Custodian:  Wachovia Bank, National Association.

Cut-off Date:  With respect to each Mortgage Loan Package, the date set forth in Exhibit I.

Data File:  The numbered items set forth in the definition of Mortgage Loan Schedule.

Defective Mortgage Loan:  A Mortgage Loan as to which any representation or warranty contained herein is inaccurate or incomplete.

Delivery Period:  With respect to a Wet Funding Mortgage Loan, no later than 2:30 p.m. (New York City Time) five (5) Business Days after the Closing Date.

Determination Date:  The 10th day (or if such 10th day is not a Business Day, the Business Day immediately preceding such 10th day) of the month of the related Remittance Date.

Dry Funding:  A Mortgage Loan as to which all Submission Package Documents have been received by the Custodian (on behalf of the Purchaser) as set forth in Section 2.01. The percentage of Dry Funding Mortgage Loans permitted to be purchased pursuant to this Agreement is set forth on Exhibit I hereto.

Due Date:  The day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

Due Period:  With respect to any Remittance Date, the period commencing on the opening of business on the second day of the month preceding the month of such Remittance Date and ending at the close of business on the first day of the month of the Remittance Date.

Eligible Account:  An account established and maintained: (a) within FDIC insured accounts (or other accounts with comparable insurance coverage) created, maintained and monitored by the Servicer so that all funds deposited therein are fully insured, (b) with the corporate trust department of a financial institution assigned a long-term debt rating of not less than Baa3, and a short term debt rating of P2, from Moody's Investors Services, Inc., and held such that the rights of the Purchaser shall be fully protected against the claims of any creditors of the Seller and of any creditors or depositors of the institution in which such account is maintained, or (c) in a separate non-trust account without FDIC or other insurance in an Eligible Institution.  In the event that a Custodial Account is established pursuant to clause (b) or (c) of the preceding sentence, the Servicer shall provide the Purchaser with written notice on the Business Day following the date on which the applicable institution fails to meet the applicable ratings requirements.

5

Eligible Institution:  An institution having (i) the highest short-term debt rating, and one of the two highest long-term debt ratings of the Rating Agencies; or (ii) with respect to any Custodial Account, an unsecured long-term debt rating of at least one of the two highest unsecured long-term debt ratings of the Rating Agencies.

Equity:  With respect to any second lien Mortgage Loan and as of any date of determination, the Appraised Value, less the unpaid principal balance of the related First Lien as of such date.

Equity Loan-to-Value or Equity LTV:  With respect to any second lien Mortgage Loan and as of any date of determination, the original principal balance of such Mortgage Loan, divided by the Equity as of such date.

Escrow Account:  Each separate trust account or accounts created and maintained pursuant to Section 4.03 and shall be established as an Eligible Account.

Escrow Instruction Letter:  A document substantially in the form of Exhibit L hereto.

Escrow Payments:  With respect to any Mortgage Loan, the amounts constituting ground rents, taxes, assessments, water rates, sewer rents, municipal charges, mortgage insurance premiums, fire and hazard insurance premiums, condominium charges, and any other payments required to be escrowed by the Mortgagor with the mortgagee pursuant to the Mortgage, applicable law or any other related document.

Event of Default:  Any one of the conditions or circumstances enumerated in Section 10.01.

Fannie Mae:  Fannie Mae, or any successor thereto.

Fannie Mae Guides:  The Fannie Mae Sellers' Guide and the Fannie Mae Servicers' Guide and all amendments or additions thereto, including, but not limited to, future updates thereof.

FDIC:  The Federal Deposit Insurance Corporation, or any successor thereto.

FIRREA:  The Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

First Lien:  With respect to any second lien Mortgage Loan, the mortgage loan relating to the corresponding Mortgaged Property having a first priority lien.

Fixed Rate Mortgage Loan:  A Mortgage Loan purchased pursuant to this Agreement which bears a fixed Mortgage Interest Rate during the life of the loan.

Forward Commitment:  A commitment from an Approved Takeout Investor to purchase a Mortgage Loan at a fixed price on a date certain.

Freddie Mac:  The Federal Home Loan Mortgage Corporation, or any successor thereto.

Freddie Mac Guides:  The Freddie Mac Sellers' Guide and the Freddie Mac Servicers' Guide and all amendments or additions thereto, including, but not limited to, any future updates thereof.

GAAP:  Generally accepted accounting procedures in the United States of America, consistently applied.

Gross Margin:  With respect to any Adjustable Rate Mortgage Loan, the fixed percentage amount set forth in the related Mortgage Note and the related Mortgage Loan Schedule that is added to the Index on each Adjustment Date in accordance with the terms of the related Mortgage Note to determine the new Mortgage Interest Rate for such Mortgage Loan.

HUD:  The United States Department of Housing and Urban Development or any successor thereto.

Imputed Interest Amount:  With respect to any Mortgage Loan which has been sold by the Purchaser, the aggregate amount obtained by the daily application of the Applicable Rate to the Adjusted Purchase Price for such Mortgage Loan on a 360-day-per-year basis for the actual number of days in the period from and including the Closing Date to and excluding the Settlement Date for such Mortgage Loan, or the date on which such Mortgage Loan is re-purchased by the Seller pursuant to Section 3.03, as the case may be; provided, however, that no provision of this Agreement shall require the payment or permit the collection of any Imputed Interest Amount in excess of the maximum permitted by applicable law; and provided further, that Imputed Interest Amount shall not be considered paid if at any time payment is rescinded or must be returned for any reason.

Indebtedness: With respect to any Person, shall mean all indebtedness, obligations and liabilities of such Person, contingent or otherwise, direct or indirect and howsoever evidenced or incurred, that should be reflected as a liability on the balance sheet of such Person prepared in accordance with GAAP

Index:  With respect to any Adjustable Rate Mortgage Loan, the index identified on the Mortgage Loan Schedule and set forth in the related Mortgage Note for the purpose of calculating the Mortgage Interest Rate thereon.

Insurance Proceeds:  With respect to each Mortgage Loan, proceeds of insurance policies insuring the Mortgage Loan or the related Mortgaged Property.

Insured Closing Protection Letter:  A document substantially in the form of Exhibit M hereto.

Interim Servicing Period:  As to each Mortgage Loan, the period of time from and including the related Cut-off Date to the related Servicing Transfer Date.

7

Interest Only Loan:  A Mortgage Loan purchased pursuant to this Agreement as to which the related Mortgage Note provides for the payment of interest only during the life of the loan, and a payment of the full amount of the principal upon the maturity of the Mortgage Loan.

Lender Paid Mortgage Insurance Policy Program or LPMI Policies:  A program or policy in which, for any Mortgage Loan underwritten with an LTV greater than 80% and less than 100%, the owner or servicer of such Mortgage Loan is responsible for the premiums associated with the mortgage insurance policy.

Leverage Ratio:  The ratio of Total Indebtedness divided by Tangible Net Worth.

LIBOR:  For each day, the rate of interest per annum for dollar deposits with a duration of one month on Bloomberg page BTMM at about 11:00 A.M. (London time) on such day (or, if such day is not a LIBOR Business Day, on the next preceding LIBOR business day) or, if that page ceases to display the necessary information, then whatever page replaces it on that service for the purpose of displaying that information (the "Bloomberg Rate").  If the Bloomberg Rate cannot be determined then the LIBOR Rate means the arithmetic average of the rates of interest offered by two prime banks in the London interbank market (selected by Program Administrator on behalf of the Purchaser) for dollar deposits with a duration of one month at about 11:00 A.M. (London time) on the LIBOR Business Day prior to such day.

LIBOR Business Day:  Any day on which banks in London and The City of New York are open and conducting transactions in foreign currency and exchange.

Liquidation Proceeds:  Amounts received in connection with the partial or complete liquidation of a defaulted Mortgage Loan, whether through the sale or assignment of such Mortgage Loan, trustee's sale, foreclosure sale or otherwise.

Losses:  Any and all losses, claims, damages, liabilities or expenses (including reasonable attorneys' fees and disbursements) incurred by any person specified in this Agreement for principal, interest or otherwise, resulting from transactions entered into under this Agreement (other than liability for taxes).  Losses must be accounted for and documented in reasonable detail when presented for reimbursement.

Loan Quarter:  Each consecutive three (3) month period commencing on the date hereof.

Loan-to-Value Ratio or LTV:  With respect to any Mortgage Loan, the ratio of the original outstanding principal amount of the Mortgage Loan plus, with respect to any second lien Mortgage Loan, the outstanding principal amount of any related First Lien as of the date of origination of such mortgage loan, to (i) with respect to a Refinanced Mortgage Loan, the Appraised Value of the related Mortgaged Property at origination, and (ii) with respect to all other Mortgage Loans, the lesser of the Appraised Value of the related Mortgaged Property at origination and the purchase price of the related Mortgaged Property.

Margin Call:  Has the meaning set forth in Section 12.03.

Margin Deficit:  Has the meaning set forth in Section 12.03.

Market Value:  With respect to any Uncovered Mortgage Loans as of any date, the whole-loan servicing released fair market value of such Uncovered Mortgage Loans on such date as determined by Program Administrator in its sole discretion.

Material Adverse Effect:  Means (i) a judgment or decree is entered against the Seller involving claims not fully covered by insurance and such judgment or decree shall not have been vacated, discharged, or stayed or bonded pending appeal within ten (10) days from entry thereof; or (ii) any governmental license, authorization or permit held by Seller which is necessary for the lawful conduct of Seller's business is revoked, suspended, not renewed or subjected to any restriction or condition limiting the conduct of Seller's business as now, or as proposed to be conducted; or (iii) any agency, or private investor, or any other party shall seize or take control of Seller's servicing, owned or pipeline portfolio for breach of any agreement applicable to such portfolio, or for any other reason whatsoever; or (iv) any other event occurs which could have a material adverse effect upon the validity, performance or enforceability of this Agreement, or upon the properties, business or condition, financial or otherwise, of Seller.

Maximum Mortgage Interest Rate:  With respect to each Adjustable Rate Mortgage Loan, a rate that is set forth in the related Mortgage Note and is the maximum interest rate to which the Mortgage Interest Rate on such Mortgage Loan may be increased.

Maximum Purchase Amount:  That limit set forth on Exhibit I.

MERS:  Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

Minimum Mortgage Interest Rate:  With respect to each Adjustable Rate Mortgage Loan, a rate that is set forth in the related Mortgage Note and is the minimum interest rate to which the Mortgage Interest Rate on such Mortgage Loan may be decreased.

Monthly Payment:  The scheduled monthly payment on a Mortgage Loan due on any Due Date allocable to principal and/or interest on such Mortgage Loan pursuant to the terms of the related Mortgage Note.

Mortgage:  With respect to a Mortgage Loan that is not a Co-op Loan, the mortgage, deed of trust or other instrument securing a Mortgage Note which creates a first or second lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note; except that with respect to real property located in jurisdictions in which the use of leasehold estates for residential properties is a widely-accepted practice, the mortgage, deed of trust or other instrument securing the Mortgage Note may secure and create a first or second lien upon a leasehold estate of the Mortgagor.  With respect to a Co-op Loan, the related Security Agreement.

Mortgage File:  With respect to each Mortgage Loan, the documents pertaining thereto specified in Exhibit A (including the Forward Commitment, except with respect to each Uncovered Mortgage Loan) and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

9

Mortgage Interest Rate:   The annual rate at which interest accrues on any Mortgage Loan in accordance with the provisions of the related Mortgage Note.

Mortgage Loan:   An individual Mortgage Loan which is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified on the Mortgage Loan Schedule, which Mortgage Loan includes without limitation the Mortgage File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, REO Disposition Proceeds, any escrow accounts related to the Mortgage Loan, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan, excluding mortgage loans replaced or repurchased in accordance herewith.

Mortgage Loan Documents:   The documents required to be contained in a Mortgage File as set forth in Exhibit A hereto.

Mortgage Loan Package: As defined in the Recitals to this Agreement.

Mortgage Loan Remittance Rate:   With respect to each Mortgage Loan, the Mortgage Interest Rate less the rate at which the premium for any LPMI Policy accrues, as applicable.

Mortgage Loan Schedule:   A computer-readable transmission in a standardized text format delivered by the Seller to (x) the Program Administrator on behalf of the Purchaser and (y) the Custodian incorporating the Required Data Fields identified on Exhibit B hereto with respect to each Mortgage Loan in the related Mortgage Loan Package.

Mortgage Note:   The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgaged Property:   With respect to a Mortgage Loan that is not a Co-op Loan, the underlying real property securing repayment of a Mortgage Note, consisting of a fee simple parcel of real estate or a leasehold estate, the term of which is equal to or longer than the term of the related Mortgage Note.   With respect to a Co-op Loan, the related Co-op Stock and Co-op Lease securing the indebtedness of the Mortgagor under the related Mortgage Loan.

Mortgagor:·  The obligor on a Mortgage Note.

OCC:  Office of the Comptroller of the Currency, and any successor thereto.

Officers' Certificate:  A certificate signed by the Chairman of the Board, the Vice Chairman of the Board, the President, a Senior Vice President or a Vice President and by the Treasurer or the Secretary or one of the Assistant Treasurers or Assistant Secretaries of the Seller, and delivered to the Purchaser or its designee as required by this Agreement.

Opinion of Counsel:  A written opinion of counsel, who may be an employee of the party on behalf of whom the opinion is being given, reasonably acceptable to the Program Administrator on behalf of the Purchaser.

OTS:  Office of Thrift Supervision, and any successor thereto.

Periodic Rate Cap:  With respect to each Adjustable Rate Mortgage Loan and any Adjustment Date therefor, a number of percentage points per annum that is set forth in the related Mortgage Note, which is the maximum amount by which the Mortgage Interest Rate for such Mortgage Loan may increase (without regard to the Maximum Mortgage Interest Rate) or decrease (without regard to the Minimum Mortgage Interest Rate) on such Adjustment Date from the Mortgage Interest Rate in effect immediately prior to such Adjustment Date, which may be a different amount with respect to the first Adjustment Date.

Person:  Any individual, corporation, partnership, joint venture, association, limited liability company, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Prepayment Penalty:  With respect to each Mortgage Loan, the penalty if the Mortgagor prepays such Mortgage Loan as provided in the related Mortgage Note or Mortgage.

Primary Mortgage Insurance Policy:  Each policy of primary mortgage insurance represented to be in effect pursuant to Section 3.02(aa), or any replacement policy therefor obtained by the Servicer.

Prime Rate:  The prime rate announced to be in effect from time to time as published as the average rate in The Wall Street Journal (Northeast Edition) (or, if more than one such rate is published, the average of such rates).

Principal:  Means any Person owning 10% of more of Seller's equity and any executive officer of Seller.

Principal Prepayment:  Any full or partial payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, including any Prepayment Penalty or premium thereon and which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Projected Loss:  As defined in Section 8.01.

Purchase:  Any purchase of Mortgage Loans pursuant to Section 2.01.

Purchase Price:  As defined in Section 2.02.

Purchase Price Percentage:  With respect to any Purchase, 98%.

Purchase Request:  An electronic request in a format acceptable to the Program Administrator by the Seller for the Purchase of Mortgage Loans submitted to the Program Administrator which request shall include the Mortgage Loan Schedule to be included in the Mortgage Loan Package, the related Data Files and the proposed Closing Date.

11

Purchaser:  Terwin Mortgage Warehouse Trust II, Series XVI, a series of Terwin Mortgage Warehouse Trust II, a Delaware statutory trust, its successors in interest and assigns. The duties, rights and obligations of the Purchaser hereunder shall from time to time be performed or enforced, as applicable, by the Program Administrator or other parties designated by the Purchaser, in each case without the requirement of notice to the Seller of such designation.

Put Back Loan:  Any Mortgage Loan that has been put back to the Seller after the Settlement Date for any reason, including, without limitation, a violation of any covenant, representation or warranty set forth in this Agreement, the related Forward Commitment or the related mortgage loan purchase agreement with the Takeout Investor, and which has not been cured to the satisfaction of the Approved Takeout Investor or the Program Administrator if applicable.

Put Back Loan Ratio:  The ratio, calculated on a monthly basis, the numerator of which is the sum of the unpaid principal balances of all Mortgage Loans that were put back by all Approved Takeout Investors to the Seller during such month and the denominator of which is the sum of the unpaid principal balances of all Mortgage Loans that were purchased by and delivered to or have received Forward Commitments from all Approved Takeout Investors during such month.

Qualified Appraiser:  With respect to each Mortgage Loan, an appraiser, duly appointed by the Seller, who had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the Mortgage Loan, and such appraiser and the appraisal made by such appraiser both satisfy the requirements of Fannie Mae and Freddie Mac and Title XI of FIRREA and the regulations promulgated thereunder, all as in effect on the date the Mortgage Loan was originated.

Qualified Insurer:  An insurance company duly qualified as such under the laws of the states in which the Mortgaged Properties are located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided by the insurance policy issued by it, approved as an insurer by Fannie Mae and Freddie Mac.

Rating Agencies: Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., and Moody's Investors Service, Inc.

Refinanced Mortgage Loan:  A Mortgage Loan which was made to a Mortgagor who owned the Mortgaged Property prior to the origination of such Mortgage Loan and the proceeds of which were used in whole or part to satisfy an existing mortgage.

Regulatory Authority:  With respect to any Person means any governmental or quasi-governmental department, commission, board, regulatory authority, bureau, agency or instrumentality, domestic, foreign, federal, state or municipal (including, without limitation, the OTS, FDIC, SEC or the NASD), any court or arbitration panel, or any private body having regulatory jurisdiction over such Person or its business or assets (including any insurance company or underwriter through whom such Person has obtained insurance coverage).

REMIC:  A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

Remittance Date:  With respect to all scheduled principal and interest payments received, the 15th day of each month, (or if such day is not a Business Day, the first Business Day thereafter), (except as otherwise provided herein).  With respect to all unscheduled principal payments received, each Business Day (except as otherwise provided herein).

REO Disposition:  The final sale by the Servicer of any REO Property.

REO Disposition Proceeds:  Amounts received by the Servicer in connection with an REO Disposition.

REO Property:  A Mortgaged Property acquired by or on behalf of the Purchaser in full or partial satisfaction of the related Mortgage.

Repurchase Price:  With respect to any Mortgage Loan and as of any date of determination, (i) the Imputed Interest Amount; plus (ii) the Adjusted Purchase Price; plus (iii) third party fees and expenses incurred in connection with the transfer of the Mortgage Loan being repurchased or the enforcement of the obligations of the Seller under Sections 3.03, 3.04 and 3.05 in each case as of such date.

Required Insurance Amount:  Has the meaning set forth on Exhibit I.

Required Sale Event:  As defined in Section 12.04 hereof.

Requirement of Law:  With respect to any Person means any law, ordinance, requirement, order, direction, rule, regulation, decision, ruling, writ, injunction, instruction, resolution, decree, or other similar document, instrument or directive, whether currently existing or promulgated hereafter, of any Regulatory Authority, or any requirement of the organizational documents of such Person.

SAIF:  The Savings Association Insurance Fund, or any successor thereto.

Scheduled Principal Balance:  As to each Mortgage Loan, (i) the principal balance of such Mortgage Loan at the Cut-off Date after giving effect to payments of principal due on or before such date, whether or not received, minus (ii) all amounts previously distributed to the Purchaser with respect to the Mortgage Loan representing payments or recoveries of principal or advances in lieu thereof.

Security Agreement:  With respect to a Co-op Loan, the agreement or mortgage creating a security interest in favor of the originator of the Co-op Loan in the related Co-op Stock.

Security Deposit Amount:  Has the meaning set forth in Section 5.01 hereof.

Seller Concentration Sublimits:  The eligibility requirements established by Program Administrator on behalf of the Purchaser with respect to its willingness to acquire

categories of Mortgage Loans from the Seller, as the same shall be set forth on Exhibit I, as amended from time to time.

Seller Funding Account:  Each separate trust account or accounts created and maintained by Purchaser's designee in furtherance of the terms hereof.

Seller Settlement Account:  Each separate trust account or accounts created and maintained by Purchaser's designee in furtherance of the terms hereof.

Seller Trigger Event:  Any one of the conditions or circumstances enumerated in Section 8.01.

Servicer:  With respect to each Mortgage Loan, the Seller or another entity designated as servicer and approved by the Purchaser and Program Administrator.

Servicing Advances:  All customary, reasonable and necessary "out of pocket" costs and expenses (including reasonable attorneys' fees and disbursements) incurred in the performance by the Servicer of its servicing obligations, including, but not limited to, the cost of (a) the preservation, restoration and protection of a Mortgaged Property, (b) any enforcement, administrative or judicial proceedings, or any legal work or advice specifically related to servicing the Mortgage Loans, including but not limited to, foreclosures, bankruptcies, condemnations, drug seizures, elections, foreclosures by subordinate or superior lienholders, and other legal actions incidental to the servicing of the Mortgage Loans (provided that such expenses are reasonable and that the Servicer specifies the Mortgage Loan(s) to which such expenses relate, and provided further that any such enforcement, administrative or judicial proceeding does not arise out of a breach of any representation, warranty or covenant of the Seller hereunder), (c) the management and liquidation of any REO Property, (d) taxes, assessments, water rates, sewer rates and other charges which are or may become a lien upon the Mortgaged Property, and Primary Mortgage Insurance Policy premiums and fire and hazard insurance coverage, and (e) any expenses reasonably sustained by the Servicer, with respect to the liquidation of the Mortgaged Property in accordance with the terms of this Agreement.

Servicing Officer:  Any officer of the Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name appears on a list of servicing officers furnished by the Servicer to the Purchaser or its designee upon request, as such list may from time to time be amended.

Servicing Transfer Date:  The date on which the responsibility for the servicing of the Mortgage Loans transfers from the Servicer to the Purchaser or its designee.

Settlement Date:  With respect to any Mortgage Loan, means the Business Day following the day on which the applicable Takeout Proceeds are received by Purchaser (or its designee) from a Takeout Investor as confirmed by receipt of the related Settlement Information.

Settlement Information:  A written advice or group of written advices which shall identify each Mortgage Loan (by the Mortgagor's surname) that the Takeout Investor acquires on a certain Business Day and confirming the amount of Takeout Proceeds allocable to each such Mortgage Loan.

14

Shortfall Premium:  The fee set forth on Exhibit I calculated on the daily average Available Amount.

Submission Package Documents:  With respect to any Mortgage Loan, the applicable documents designated on Exhibit K, each in form and substance satisfactory to the Program Administrator on behalf of the Purchaser in its sole discretion.

Takeout Commitment Ratio:  The ratio, calculated monthly on all Mortgage Loans, the numerator of which is the outstanding principal balance of all Mortgage Loans which had a Forward Commitment which was delivered during such month and the denominator of which is the outstanding principal balance of all Mortgage Loans purchased or held during such month which had a Forward Commitment.

Takeout Investor Relationship:  As defined in Section 3.07(m).

Takeout Proceeds:  The amount of funds a purchaser (either an Approved Takeout Investor or other purchaser identified by the Program Administrator) pays the Purchaser with respect to a Mortgage Loan.

Tangible Net Worth:  At the time of such determination, the excess of total assets over total liabilities, each to be determined in accordance with GAAP, excluding, however, from the determination of total assets, all assets which would be classified as intangible assets under GAAP, including, without limitation, goodwill, licenses, patents, trademarks, copyrights and franchises and any non-acceptable assets as determined by HUD, and including in the determination of total liabilities the Aggregate Adjusted Purchase Price.

Termination Date:  The earlier of (i) 364 days from the date of the first Purchase hereunder and (ii) the occurrence of an Event of Default hereunder.

Top-Up Account:  Each separate trust account or accounts created and maintained by Purchaser's designee in furtherance of the terms hereof.

Total Indebtedness:  At any date, means all items (other than capital stock, capital surplus, retained earnings, deferred taxes and deferred credits) of Indebtedness as at the date on which Total Indebtedness is to be determined.

Uncommitted Availability:  That portion of the Available Amount that may be held by Purchaser hereunder as Uncovered Mortgage Loans, not to exceed the amount set forth on Exhibit I hereto.

Uncovered Mortgage Loan:  Any Mortgage Loan with respect to which the Seller does not have a Forward Commitment.

Underwriting Standards:  As to each Mortgage Loan with respect to which a Forward Commitment exists, the applicable Takeout Investor's written seller and underwriting guidelines in effect as of the origination date of the Mortgage Loan(s).  As to each Uncovered Mortgage Loan, The Winter Group's written seller and underwriting guidelines in effect as of the origination date of the Mortgage Loan(s).

15

Warehouse Funding:  A Purchase of a closed Mortgage Loan which involves the payoff of the related Warehouse Lender.  The percentage of Warehouse Funding Mortgage Loans permitted to be purchased pursuant to this Agreement is set forth on Exhibit I hereto.

Warehouse Lender:  Any lender providing financing to Seller for the purpose of originating or purchasing Mortgage Loans, which lender, prior to the related Closing Date, has a security interest in such Mortgage Loans as collateral for the obligations of Seller to such lender.

Warehouse Lender Release:  A letter in the form of Exhibit N from a Warehouse Lender to Purchaser.

Wet Funding:  A Mortgage Loan that is being closed with the Mortgagor on the Closing Date therefor and accordingly, as to which Advance Submission Documents are sent to Custodian prior to 2:30 p.m. (New York City time) on the related Closing Date.  The percentage of Wet Funding Mortgage Loans permitted to be purchased pursuant to this Agreement is set forth on Exhibit I hereto.

ARTICLE II

SERVICING OF MORTGAGE LOANS;
RECORD TITLE AND POSSESSION OF MORTGAGE FILES;
BOOKS AND RECORDS; CUSTODIAL AGREEMENT;
DELIVERY OF MORTGAGE LOAN DOCUMENTS

Section 2.01          Agreement to Purchase.

(a) The Seller may sell and the Purchaser may agree to purchase (under the terms and conditions and subject to the limitations set forth herein) on each requested Closing Date (or the following Business Day if all Submission Package Documents, or Advance Submission Documents, as the case may be, are not received prior to 2:30 PM (New York City time)) pursuant to this Agreement at the Purchase Price the Mortgage Loans being sold by the Seller and listed on the Mortgage Loan Schedule, together, in some cases, with the servicing rights associated therewith, having an aggregate Scheduled Principal Balance in an amount as set forth in the Purchase Request, or in such other amount as agreed by the Program Administrator on behalf of the Purchaser and the Seller as evidenced by the actual aggregate principal balance of the Mortgage Loans accepted by the Program Administrator on behalf of the Purchaser on such Closing Date; provided that immediately following such purchase the Available Amount would not be less than zero. Each Purchase Request shall contain in an electronic format the Mortgage Loan Schedule for the Mortgage Loans to be purchased on such Closing Date.

(b) On any Business Day, Seller may initiate a request for purchase pursuant to this Agreement by delivering to the Program Administrator on behalf of Purchaser and to the Custodian a Purchase Request on the proposed Closing Date which Purchase Request must be received by the Program Administrator and by the Custodian on or prior to 2:30 p.m. (New York City time) on the requested Closing Date. The Program Administrator on behalf of Purchaser shall indicate its acceptance or declination of each Mortgage Loan included in each Purchase Request electronically, as well as confirm the Purchase Price of each purchased Mortgage Loan. Notwithstanding anything contained herein to the contrary, Purchaser is under no obligation to purchase any Mortgage Loans or accept any Purchase Request pursuant to this Agreement.

(c) If Program Administrator on behalf of Purchaser does not indicate its acceptance of a Purchase Request electronically prior to 4:00 p.m. (New York City time) on the proposed Closing Date, Purchaser shall be deemed to have declined such Purchase Request. Notwithstanding the foregoing, at no time will the Purchaser purchase a Mortgage Loan if it would cause the Available Amount to be reduced below zero, or any applicable Seller Concentration Sublimit, to be exceeded or otherwise to fail to be satisfied by Seller.

(d) Each accepted Purchase Request shall be irrevocable and binding on Purchaser and Seller. If Seller shall fail to timely deliver the Mortgage Loans in accordance with the provisions set forth below, then Seller shall return or cause the related Approved Closing Agent to return to the Purchaser the Purchase Price plus interest thereon at the Applicable Rate.

(e) The Purchaser shall pay the Purchase Price for the Mortgage Loans to be purchased by it hereunder on each Closing Date by wire transfer, according to instructions listed

17

on the related Purchase Request, in immediately available funds to the related Approved Closing Agent's or the related Warehouse Lender's account, as appropriate, not later than 6:00 p.m. (New York City time) on the Closing Date, of an amount in Dollars equal to the aggregate Purchase Price for the Mortgage Loans to be purchased and any additional closing expenses related to such Mortgage Loans on such Closing Date. With respect to each Dry Funding Mortgage Loan:

    (i) If the funding of any Dry Funding Mortgage Loan involves a payment to a Warehouse Lender, the Seller shall furnish to the Purchaser or its designee a Warehouse Lender Release, together with wire instructions for the payoff of the Warehouse Lender. If any Dry Funding Mortgage Loan is a MERS Designated Loan, the Seller shall furnish a MERS report reflecting the Approved Closing Agent, as "Interim Funder" or "Warehouse Gestation Lender" for each such Mortgage Loan.

    (ii) The Seller shall deliver to the Custodian, no later than 2:30 p.m. (New York City time), on the requested Closing Date, the Submission Package Documents pertaining to each Dry Funding Mortgage Loan to be sold to the Purchaser.

  With respect to each Wet Funding Mortgage Loan funded on a Closing Date, the Seller shall deliver the Submission Package Documents for receipt by the Custodian within the Delivery Period.

  (f) Pursuant to the terms herein, the Purchaser, from time to time, will deliver the Mortgage Loans, including the Submission Package Documents held by the Custodian, either (i) to an Approved Takeout Investor or (ii) to the Seller for repurchase for as required under this Agreement. Delivery of the Mortgage Loans can only be authorized and requested by the Program Administrator on behalf of the Seller.

  (g) Any delivery request to be made in accordance with paragraph (f) above shall be made, in writing, by the Program Administrator on behalf of the Seller. Upon receipt of such written request by the Program Administrator, the Custodian will utilize the following procedures:

    (i) confirm via Electronic Transmission from the Program Administrator that the recipient that has been designated by the Seller is the proper recipient;

    (ii) retain the original Assignment of Mortgage and a copy of the Mortgage Note, which documents shall be held by the Custodian on behalf of the Purchaser for 90 days following the Settlement Date or the day the Mortgage Loan was repurchased by the Seller; and

    (iii) at the expense of the Seller, deliver to the party confirmed in paragraph (i) above the related Submission Package Documents by overnight delivery using a

nationally recognized overnight delivery service.

Section 2.02          Purchase Price.

The aggregate Purchase Price for the Mortgage Loans in a Mortgage Loan Package shall be equal to the Purchase Price Percentage, multiplied by the lesser of (i) the aggregate Scheduled Principal Balance of the Mortgage Loans listed on the related Mortgage Loan Schedule, as of the related Cut-off Date, and (ii) (A) with respect to any Mortgage Loans listed on the related Mortgage Loan Schedule which are subject to a Forward Commitment, the aggregate Adjusted Takeout Proceeds of such Mortgage Loans or (B) with respect to any Uncovered Mortgage Loans listed on the related Mortgage Loan Schedule, the aggregate Market Value of such Mortgage Loans (the "Purchase Price").

The Purchase Price as set forth in the preceding paragraph for the Mortgage Loans in a Mortgage Loan Package shall be paid on the Closing Date by wire transfer of immediately available funds as provided in Section 2.01.

With respect to each Mortgage Loan, the Purchaser shall be entitled to (i) the principal portion of all Monthly Payments due after the Cut-off Date, (ii) all other recoveries of principal collected on or after the Cut-off Date (provided, however, that the principal portion of all Monthly Payments due on or before the Cut-off Date and collected by the Servicer or any successor servicer after the Cut-off Date shall belong to the Seller), (iii) the Takeout Proceeds, and (iv) all payments of interest on the Mortgage Loans (minus that portion of any such payment which is allocable to the period prior to the Cut-off Date). The Scheduled Principal Balance of each Mortgage Loan as of the Cut-off Date is determined after application of payments of principal due on or before the Cut-off Date whether or not collected, together with any unscheduled Principal Prepayments collected prior to the Cut-off Date; provided, however, that Monthly Payments for a Due Date beyond the Cut-off Date shall not be applied to the principal balance as of the Cut-off Date, such Monthly Payments shall be the property of the Purchaser. The Seller shall deposit any such Monthly Payments into the Custodial Account.

The Purchaser may at its discretion at any time without any notice to the Seller deduct from and offset against the Purchase Price any amounts, including escrows, owed by the Seller to the Purchaser in connection with a particular purchase or other transaction. All such amounts are, shall be, and shall at all times be deemed, and shall remain the sole property of the Purchaser, and the Seller waives, and shall not have, any right, claim or interest whatsoever in such amounts, and the Seller irrevocably and unconditionally discharges, releases and indemnifies and holds harmless the Purchaser and its affiliates, successors, and assigns from and against any and all claims, demands, liabilities and obligations whatsoever.

Section 2.03          Servicing of Mortgage Loans.

On each Closing Date, the Mortgage Loans in the related Mortgage Loan Package will be sold by the Seller to the Purchaser on a servicing released basis. Subject to, and upon the terms and conditions of this Agreement, the Seller hereby transfers, assigns and delivers to the Purchaser or its designee the right to service each such Mortgage Loan sold by it as of such Closing Date.

Simultaneously with the execution and delivery of this Agreement, for each Mortgage Loan Package, the Servicer hereby agrees to service the Mortgage Loans listed on the Mortgage Loan Schedule, during the Interim Servicing Period in accordance with Exhibit H, Accepted Servicing Practices and this Agreement.

Section 2.04          Record Title and Possession of Mortgage Files;
                      Maintenance of Servicing Files.

As of each Closing Date, the Seller will have sold, transferred, assigned, set over and conveyed to the Purchaser, without recourse, and the Seller hereby acknowledges that the Purchaser will have, all the right, title and interest of the Seller in and to, the Mortgage Loans. In accordance with Section 2.07, the Seller shall deliver at its own expense, the Submission Package Documents or for a Wet Funding, the Advance Submission Documents for the related Mortgage Loans to the Custodian. The possession of each servicing file by the Servicer is at the will of the Purchaser, for the sole purpose of servicing the related Mortgage Loan during the Interim Servicing Period, and such retention and possession by the Servicer is in a custodial capacity only. From each Closing Date, the ownership of each related Mortgage Loan, including the Mortgage Note, the Mortgage, the contents of the related Mortgage File and all rights, benefits, proceeds and obligations arising therefrom or in connection therewith, has been vested in the Purchaser. All rights arising out of the Mortgage Loans including, but not limited to, all funds received on or in connection with the Mortgage Loans and all records or documents with respect to the Mortgage Loans prepared by or which come into the possession of the Seller shall be received and held by the Seller in trust for the benefit of the Purchaser as the owner of the Mortgage Loans. Any portion of the Mortgage Files retained by the Seller shall be appropriately identified in the Seller's computer system to clearly reflect the ownership of the Mortgage Loans by the Purchaser. The Servicer shall release its custody of the contents of the servicing files only in accordance with written instructions of the Program Administrator on behalf of the Purchaser, except when such release is required as incidental to the Servicer's servicing of the Mortgage Loans or is in connection with a repurchase of any Mortgage Loan or Loans with respect thereto pursuant to this Agreement, such written instructions shall not be required. Servicing files for the Mortgage Loans shall be delivered to the Purchaser or its designee on or before the Servicing Transfer Date.

Section 2.05          Books and Records.

The sale of each Mortgage Loan will be reflected on the Seller's balance sheet and other financial statements as a sale of assets by the Seller. The Seller shall maintain a complete set of books and records for the Mortgage Loans sold by it which shall be appropriately identified in the Seller's computer system to clearly reflect the ownership of the Mortgage Loans by the Purchaser. In particular, the Seller shall maintain in its possession, available for inspection by the Purchaser, or its designee and shall deliver to the Purchaser upon demand, evidence of compliance with all federal, state and local laws, rules and regulations, and requirements of Fannie Mae or Freddie Mac, as applicable, including but not limited to documentation as to the method used in determining the applicability of the provisions of the Flood Disaster Protection Act of 1973, as amended, to the Mortgaged Property, documentation evidencing insurance coverage and eligibility of any condominium project for approval by Seller and periodic inspection reports. To the extent that original documents are not required for

20

ARTICLE IX

THE SELLER AND THE SERVICER

Section 9.01            Indemnification; Third Party Claims.

The Servicer agrees to indemnify on demand the Purchaser, the Program
Administrator and their affiliates, trustees, agents, successors and assignees, and hold them
harmless against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and
related costs, judgments, and any other costs, fees and expenses that the Purchaser or such
Person may sustain in any way related to the failure of the Servicer to observe and perform its
duties, obligations, covenants, and agreements to service the Mortgage Loans during the Interim
Servicing Period in strict compliance with the terms of this Agreement.  The Seller agrees to
indemnify on demand the Purchaser, the Program Administrator and their affiliates, trustees,
agents, successors and assignees, and hold them harmless against any and all claims, losses,
damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs,
fees and expenses that they may sustain in any way related to (i) the failure of the Seller to
observe and perform its duties, obligations, and covenants in strict compliance with the terms of
this Agreement, (ii) the breach of a representation or warranty set forth in Sections 3.01 or 3.02
of this Agreement, (iii) any act or omission on the part of the Seller or any other person or entity
in the origination, receiving, processing, funding or servicing of any Mortgage Loan prior to the
related Servicing Transfer Date or otherwise arising from the transfer of servicing of the
Mortgage Loans provided for in this Agreement or (iv) the Seller's inability to effect or cause the
transfer of the servicing of the Mortgage Loans to a successor servicer pursuant to Section 13.01
of this Agreement.  An indemnifying party hereunder shall immediately notify the Purchaser if a
claim is made by a third party with respect to this Agreement or a Mortgage Loan, assume (with
the consent of the Purchaser) the defense of any such claim and pay all expenses in connection
therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or
decree which may be entered against it or the Purchaser in respect of such claim, but failure to so
notify the Purchaser shall not limit its obligations hereunder.  An indemnifying party hereunder
shall follow any written instructions received from the Purchaser in connection with such claim.
The Purchaser shall promptly reimburse an indemnifying party hereunder for all amounts
advanced by it pursuant to the two preceding sentences except when the claim relates to the
failure of the Servicer to service and administer the Mortgage Loans in strict compliance with the
terms of this Agreement, the failure of the Seller to perform its duties and obligations pursuant to
this Agreement, the breach of any representation or warranty set forth in Sections 3.01 or 3.02, or
the gross negligence, bad faith or willful misconduct of either the Seller or the Servicer.  The
Seller, or the Servicer as the case may be, agrees that it will not enter into any settlement of any
such claim without the consent of the Purchaser unless such settlement includes an unconditional
release of the Purchaser from all liability that is the subject matter of such claim.  The provisions
of this Section 9.01 shall survive termination of this Agreement, the transfer of the servicing
rights and the transfer of the Mortgage Loans.

Section 9.02            Merger or Consolidation of the Seller or the Servicer.

Each of the Seller and the Servicer shall keep in full effect its existence, rights and
franchises as a corporation under the laws of the state of its incorporation except as permitted

63

herein, and shall obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement, or any of the Mortgage Loans and to perform its duties under this Agreement.

Any Person into which either the Seller or the Servicer may be merged or consolidated, or any corporation resulting from any merger, conversion or consolidation to which either the Seller or the Servicer shall be a party, or any Person succeeding to the business of either the Seller or the Servicer whether or not related to loan servicing, shall be the successor of the Seller or of the Servicer, as applicable, hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided, however, that the successor or surviving Person shall be an institution (i) having a GAAP net worth of not less than $10,000,000, (ii) the deposits of which are insured by the FDIC, SAIF and/or BIF, or which is a HUD-approved mortgagee whose primary business is in origination and servicing of first or second lien mortgage loans, and (iii) who is a Fannie Mae or Freddie Mac approved seller/servicer in good standing.  Notwithstanding the foregoing, if the successor or surviving Person is an institution with a GAAP net worth of less than $10,000,000, then the Program Administrator on behalf of the Purchaser may, in its sole discretion, waive such minimum GAAP net worth requirement.

Section 9.03          Limitation on Liability of the Servicer.

Neither the Servicer nor any of the officers, employees or agents of the Servicer shall be under any liability to the Purchaser for any servicing action taken or for refraining from the taking of any servicing action in good faith pursuant to this Agreement, or for errors in judgment made in good faith; provided, however, that this provision shall not protect the Servicer or any such person against any breach of warranties or representations made herein, or failure to perform its servicing obligations in strict compliance with any standard of care set forth in this Agreement, or any liability which would otherwise be imposed by reason of negligence, bad faith or willful misconduct, or any breach of the terms and conditions of this Agreement. The Servicer and any officer, employee or agent of the Servicer may rely in good faith on any document of any kind prima facie properly executed and submitted by the Purchaser respecting any servicing matters arising hereunder.  The Servicer shall not be under any obligation to appear in, prosecute or defend any legal action which is not incidental to its duties to service the Mortgage Loans in accordance with this Agreement and which in its reasonable opinion may involve it in any expenses or liability; provided, however, that the Servicer may, with the consent of the Program Administrator on behalf of the Purchaser, undertake any such action which it may deem necessary or desirable in respect to this Agreement and the rights and duties of the parties hereto.

# ARTICLE XII

## RECONSTITUTION AND RESALE OF MORTGAGE LOANS; VALUATION DEFICIENCY

Section 12.01          RESERVED

Section 12.02          Sale of Mortgage Loans to Takeout Investors.

(a) The sale of each Mortgage Loan to Purchaser shall include, and Seller hereby assigns to Purchaser, free of any security interest, lien, claim or encumbrance of any kind, Seller's rights to deliver the Mortgage Loan to the Takeout Investor under the related Forward Commitment, if any, and to receive the Takeout Proceeds therefor from such Takeout Investor. Such sale shall be made pursuant to the provisions of such Forward Commitment. With respect to each Uncovered Mortgage Loan, and any Mortgage Loan as to which the Takeout Investor fails to honor its Forward Commitment, Program Administrator in its sole discretion and without the consent of Seller, shall direct Purchaser at any time to sell, any such Mortgage Loans to an investor designated by and pursuant to the terms specified by Program Administrator.

(b) Purchaser shall permit Seller to substitute a different Forward Commitment with respect to a Mortgage Loan provided (i) such request is made in writing within twenty-one (21) days after the Closing Date, (ii) the Mortgage Loan is underwritten to the standards and guidelines of the new Takeout Investor and (iii) no liability to the original Takeout Investor attaches to Purchaser. After such twenty-one (21) day period Purchaser may withhold its consent to the substitution of the Forward Commitment in its sole discretion.

(c) Seller shall cause each Takeout Investor to provide Settlement Information with respect to any Mortgage Loan as to which it has delivered a Forward Commitment.

(d) The Settlement Date shall occur on the Business Day following the day upon which the applicable Takeout Proceeds are received by Purchaser (or its designee). Any Settlement Information and/or Takeout Proceeds received by Program Administrator (or its designee) after 12:00 p.m. (New York City time) on a Business Day (or at any time on a day which is not a Business Day) shall be deemed for all purposes to have been received on the next Business Day.

(e) If a Takeout Investor delivers Takeout Proceeds but fails to provide the correct Settlement Information, the Program Administrator (or its designee) will notify the Seller and/or Takeout Investor. If the Takeout Investor fails to provide the correct Settlement Information within one (1) Business Day after receipt of such notification, the Program Administrator may, in its sole discretion:

(i)          return any Takeout Proceeds for which it has incomplete Settlement Information to the Takeout Investor; or

(ii)          place such Takeout Proceeds in a non-interest bearing account until the requisite Settlement Information and any additional Takeout Proceeds necessitated by the delay in settlement is provided.

69

Section 12.03  <u>Market Value.</u>

(a) On each Business Day, Program Administrator shall determine the Market Value of all the Uncovered Mortgage Loans that are held by Purchaser hereunder. If the Market Value of the Uncovered Mortgage Loans relating to any Purchase at any time has declined from the Adjusted Purchase Price of the Uncovered Mortgage Loans as of the relevant Closing Date (a "<u>Margin Deficit</u>"), then Program Administrator on behalf of the Purchaser may by notice to Seller require Seller to transfer to Purchaser cash or, at the Program Administrator's (on behalf of the Purchaser) sole discretion, additional Mortgage Loans reasonably acceptable to the Program Administrator on behalf of the Purchaser ("<u>Additional Mortgage Loans</u>") having an aggregate Market Value at least equal to the Margin Deficit (such requirement, a "<u>Margin Call</u>").

(b) Notice delivered pursuant to (a) above may be given by any means. Any notice given before 10:00 a.m. (New York City time) on a Business Day shall be met, and the related Margin Call satisfied, no later than 5:00 p.m. (New York City time) on such Business Day. Notice given on any Business Day after the applicable hour specified in the preceding sentence, shall be met, and the related Margin Call satisfied, no later than 5:00 p.m. (New York City time) on the following Business Day. The failure of Purchaser, on any one or more occasions, to exercise its rights hereunder, shall not change or alter the terms and conditions to which this Agreement is subject or limit the right of Purchaser to do so at a later date. Seller and Purchaser each agree that a failure or delay by Purchaser to exercise its rights hereunder shall not limit or waive Purchaser's rights under this Agreement or otherwise existing by law or in any way create additional rights for Seller.

(c) Any cash or Additional Mortgage Loans provided by Seller hereunder shall result in a reduction of the Adjusted Purchase Price of the related Uncovered Mortgage Loans.

Section 12.04      <u>Required Sale Event.</u>

If Seller fails to deliver such cash or Additional Mortgage Loans as provided in Section 12.03 (a) above, a "<u>Required Sale Event</u>" shall be deemed to have occurred with respect to such Uncovered Mortgage Loans. In addition if the Settlement Date for any Mortgage Loan has not occurred within forty-five (45) days of the Closing Date (such time period to be extended by the Program Administrator, in its sole discretion in fifteen day intervals up to ninety (90) days) then a Required Sale Event shall be deemed to have occurred with respect to such Mortgage Loans. Furthermore, upon the occurrence and continuation of an Event of Default pursuant to Section 10.01, a Required Sale Event shall be deemed to have occurred with respect to all the Mortgage Loans covered by this Agreement. Upon the occurrence of a Required Sale Event, Program Administrator may instruct Purchaser to forthwith sell, assign, give an option or options to purchase, contract to sell, or otherwise dispose of and deliver the related Mortgage Loans, or any part thereof, at such public or private sale or sales, at such place or places, at such price or prices and upon such other terms and conditions as Program Administrator may deem best, for cash or on credit or for future delivery without assumption of any credit risk. Upon any sale, transfer or other disposition of the related Mortgage Loans pursuant hereto Purchaser shall have the right to deliver, assign and transfer to the transferee thereof the related Mortgage Loans so sold. Each transferee upon any such transfer or other disposition shall hold the property thereby acquired by it absolutely free from any claim or right of any kind, including any equity

70

or rights of redemption, of Seller, who hereby specifically waives all rights of redemption, stay or appraisal which it has, or may have under any Requirement of Law whether now existing or hereafter adopted.  Program Administrator and Purchaser shall incur no liability as a result of the sale of the related Mortgage Loans, or any part thereof, at any public or private sale.  Seller hereby waives any claims against Program Administrator and Purchaser arising by reason of the fact that the price at which the related Mortgage Loans may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was such that the Purchaser sustained Losses, even if Program Administrator on behalf of Purchaser, accepts the first offer received and does not offer the related Mortgage Loans to more than one offeree. Seller acknowledges that the related Mortgage Loans may be sold in such manner to affiliates of Purchaser.

Section 12.05        <u>RESERVED.</u>

Section 12.06        <u>Intent of Parties; Security Interest.</u>

Purchaser and Seller confirm that the transactions contemplated hereby are intended to be true sales and absolute assignments of the Mortgage Loans by Seller to Purchaser rather than borrowings secured by the Mortgage Loans.  Purchaser shall own the Mortgage Loans and have all rights and entitlements appurtenant thereto, including, without limitation, the right (subject only to any contractual obligations Purchaser may have assumed with respect to any Takeout Investor), to sell any Mortgage Loan to such third party, and on such terms, as it deems appropriate, to pledge its interest, to take over servicing any Mortgage Loan or replace Seller as the servicing agent with respect to any Mortgage Loan. Seller shall not take any action inconsistent with Purchaser's ownership of any Mortgage Loans and shall not claim any legal, beneficial or other interest in any Mortgage Loan.  In the event that any Purchase hereunder is construed by any court or regulatory authority as a loan or other than a purchase and sale of the related Mortgage Loans, Seller shall be deemed to have hereby pledged to Purchaser as security for the performance by Seller of all of its obligations from time to time arising hereunder, and shall be deemed to have granted to Purchaser a first priority security interest in, the Mortgage Loans, the related records, all mortgage guaranties and insurance relating to such Mortgage Loans (issued by governmental agencies or otherwise) or the related Mortgaged Property and any mortgage insurance certificate or other document evidencing such mortgage guaranties or insurance relating to such Mortgage Loans and all claims and payments thereunder, any purchase agreements or other agreements or contracts relating to or constituting any or all of the foregoing, all "accounts" as defined in the Uniform Commercial Code relating to or constituting any or all of the foregoing, and any other contract rights, payment rights, rights to payment (including payment of interest or finance charges), and all instruments, chattel paper, securities, investment property and general intangibles and other assets comprising or relating to the Mortgage Loans, all other insurance policies and insurance proceeds relating to any Mortgage Loans or the related Mortgaged Property, any security account and all rights to income and the rights to enforce such payments arising from any of the Mortgage Loans, all servicing rights to the Mortgage Loans, all guarantees or other support for the Loans, and any and all replacements, substitutions, distributions on, or cash or non-cash proceeds with respect to, any of the foregoing (collectively, the "<u>Collateral</u>").  In furtherance of the foregoing, (i) this Agreement shall constitute a security agreement, (ii) Purchaser shall have all of the rights of a secured party with respect to the Collateral pursuant to applicable law and (iii) Seller shall execute all such

71

documents, including but not limited to financing statements under the Uniform Commercial Code as in effect in any applicable jurisdictions, as the Purchaser may reasonably require to effectively perfect and evidence Purchaser's first priority security interest in the Collateral. All filing fees incurred in connection with perfecting and evidencing Purchaser's first priority security interest in the Collateral shall be borne by Seller. If any such fees are advanced by Purchaser, they shall be reimbursed by Seller promptly upon presentation of an invoice and appropriate supporting documentation from Program Administrator. Seller shall indemnify and hold Purchaser harmless from any Losses that may arise in the event that the security interest referred in this Section 12.06 shall not be a security interest in the Collateral.

ARTICLE XIII

MISCELLANEOUS PROVISIONS

Section 13.01          Successor to the Servicer.

Prior to termination of Servicer's responsibilities and duties under this Agreement pursuant to Section 2.08 and 2.09 of Exhibit H, or 11.01 or 11.02 of this Agreement, the Purchaser or the Program Administrator shall (i) succeed to and assume all of the Servicer's responsibilities, rights, duties and obligations under this Agreement, or (ii) appoint a successor having the characteristics set forth in Section 9.02 hereof and which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Servicer under this Agreement prior to the termination of the Servicer's responsibilities, duties and liabilities under this Agreement.  In connection with such appointment and assumption, the Purchaser may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as the Purchaser and such successor shall agree.  In the event that the Servicer's duties, responsibilities and liabilities under this Agreement should be terminated pursuant to the aforementioned Sections, the Servicer shall discharge such duties and responsibilities during the period from the date it acquires knowledge of such termination until the effective date thereof with the same degree of diligence and prudence which it is obligated to exercise under this Agreement, and shall take no action whatsoever that might impair or prejudice the rights or financial condition of its successor.  The removal of the Servicer pursuant to the aforementioned Sections shall not become effective until a successor shall be appointed pursuant to this Section and shall in no event relieve the Servicer of the representations and warranties made pursuant to Section 3.01 and the indemnification obligations of the Servicer pursuant to Section 9.01.

Any successor appointed as provided herein shall execute, acknowledge and deliver to the Servicer and to the Purchaser or its designee an instrument accepting such appointment, whereupon such successor shall become fully vested with all the rights, powers, duties, responsibilities, obligations and liabilities of the Servicer, with like effect as if originally named as a party to this Agreement.  Any termination or resignation of the Servicer or this Agreement pursuant to Section 2.08 and 2.09 of Exhibit H, or 11.01 or 11.02 of this Agreement, shall not affect any claims that the Purchaser may have against the Servicer arising prior to any such termination or resignation.

The Servicer shall promptly deliver to the successor the funds in the Custodial Account and the Escrow Account and the Mortgage Files and related documents and statements held by it hereunder and the Servicer shall account for all funds.  The Servicer shall execute and deliver such instruments and do such other things all as may reasonably be required to more fully and definitely vest and confirm in the successor all such rights, powers, duties, responsibilities, obligations and liabilities of the Servicer.  The successor shall make arrangements as it may deem appropriate to reimburse the Servicer for unrecovered Servicing Advances which the successor retains hereunder and which would otherwise have been recovered by the Servicer pursuant to this Agreement but for the appointment of the successor servicer.

Section 13.02        Amendment.

This Agreement may be amended or supplemented from time to time as follows:
(a) with respect to Mortgage Loans not yet purchased by the Purchaser, by delivery of a written
notification of amendment executed by the Purchaser and accepted in writing by the Program
Administrator, which amendment shall be effective from and after the date delivered to the
Purchaser for all subsequent Mortgage Loans purchased hereunder; and (b) with respect to
Mortgage Loans previously purchased by the Purchaser, by written agreement executed by the
Purchaser, the Seller and the Program Administrator.

Section 13.03        Recordation of Agreement.

To the extent permitted by applicable law, this Agreement is subject to
recordation in all appropriate public offices for real property records in all the counties or other
comparable jurisdictions in which any of all the Mortgaged Properties subject to the Mortgages
are situated, and in any other appropriate public recording office or elsewhere, such recordation
to be effected by the Seller at the Seller's expense on direction of the Program Administrator on
behalf of the Purchaser.

Section 13.04        Governing Law.

This Agreement shall be governed by and construed in accordance with the laws
of the State of New York, without regard to its conflict of law provisions, except to the extent
preempted by Federal law.  The obligations, rights and remedies of the parties hereunder shall be
determined in accordance with such laws.

Section 13.05        Notices.

Any demands, notices or other communications permitted or required hereunder
shall be in writing and shall be deemed conclusively to have been given if personally delivered at
or mailed by registered mail, postage prepaid, and return receipt requested or certified mail,
return receipt requested, or transmitted by telex, telegraph or telecopier and confirmed by a
similar mailed writing, to the address set forth below the related signature to this Agreement or
such other address as may hereafter be furnished to the other party by like notice.  Any such
demand, notice or communication hereunder shall be deemed to have been received on the date
delivered to or received at the premises of the addressee (as evidenced, in the case of registered
or certified mail, by the date noted on the return receipt).

Section 13.06        Severability of Provisions.

Any part, provision, representation or warranty of this Agreement which is
prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such
prohibition or unenforceability without invalidating the remaining provisions hereof.  Any part,
provision, representation or warranty of this Agreement which is prohibited or unenforceable or
is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction,
to the extent of such prohibition or unenforceability without invalidating the remaining
provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any
Mortgage Loan shall not invalidate or render unenforceable such provision in any other

jurisdiction.  To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof.  If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

Section 13.07        Exhibits.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

Section 13.08        General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(i)      the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(ii)      accounting terms not otherwise defined herein have the meanings assigned to them in accordance with GAAP;

(iii)      references herein to "Articles," "Sections," Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(iv)      a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(v)      the words "herein," "hereof," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular provision;

(vi)      the term "include" or "including" shall mean without limitation by reason of enumeration; and

(vii)      headings of the Articles and Sections in this Agreement are for reference purposes only and shall not be deemed to have any substantive effect.

Section 13.09        Reproduction of Documents.

This Agreement and all documents relating thereto, including, without limitation, (i) consents, waivers and modifications which may hereafter be executed, (ii) documents received by any party at the closing, and (iii) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

Section 13.10        Confidentiality of Information.

Each party recognizes that, in connection with this Agreement, it may become privy to non-public information regarding the financial condition, operations and prospects of the other party. Except as required by law, each party agrees to keep all non-public information regarding the other party strictly confidential, and to use all such information solely in order to effectuate the purpose of the Agreement, provided that each party may provide confidential information to its employees, agents and affiliates who have a need to know such information in order to effectuate the transaction, provided further that such information is identified as confidential non-public information. In addition, confidential information may be provided to a regulatory authority with supervisory power over the Purchaser, provided such information is identified as confidential non-public information.

Section 13.11        Authority of Program Administrator to Direct.

The Seller and Purchaser hereby grant to the Program Administrator the power to direct the custodian holding any Eligible Accounts to make transfers to and from such Eligible Accounts and to perform all of the Purchaser's duties and to act as Purchaser's designee for purposes of directing any actions needed to be taken by Purchaser to enforce Purchaser's rights under this Agreement.

Section 13.12        Assignment by Purchaser.

The Purchaser shall have the right, without the consent of the Seller or the Servicer hereof, to assign, in whole or in part, its interest under this Agreement with respect to some or all of the Mortgage Loans, and designate any person to exercise any rights of the Purchaser hereunder and the assignee or designee shall accede to the rights and obligations hereunder of the Purchaser with respect to such Mortgage Loans. The Seller agrees that all the representations and warranties set forth in Section 3.01 and Section 3.02 shall be automatically restated as of the date of the assignment or sale to the assignee without the need of any notice to or further action by the Purchaser, the Seller, the Servicer or any other party. All references to the Purchaser in this Agreement shall be deemed to include its assignee or designee.

Notwithstanding any provision in this Agreement to the contrary, the Purchaser may at its sole discretion without notice to or action by the Seller or the Servicer assign, delegate

or transfer to any third party the right to enforce any obligation of the Seller or the Servicer under this Agreement.

Section 13.13          No Partnership.

Nothing herein contained shall be deemed or construed to create a co-partnership or joint venture between the parties hereto and the services of the Servicer shall be rendered as an independent contractor and not as agent for Purchaser.

Section 13.14          Execution; Successors and Assigns.

This Agreement may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement. Subject to Section 9.02, this Agreement shall inure to the benefit of and be binding upon the Seller, the Servicer and the Purchaser and their respective successors and assigns.

Section 13.15          Entire Agreement.

Each of the parties to this Agreement acknowledges that no representations, agreements or promises were made to any of the other parties to this Agreement or any of its employees other than those representations, agreements or promises specifically contained herein. This Agreement sets forth the entire understanding between the parties hereto and shall be binding upon all successors of all of the parties.

Section 13.16          No Solicitation.

From and after the Closing Date, the Seller agrees that it will not take any action or permit or cause any action to be taken by any of its agents or affiliates, or by any independent contractors on the Seller's behalf, to personally, by telephone, by mail, or electronically by e-mail or through the internet or otherwise, solicit the borrower or obligor under any Mortgage Loan to refinance the Mortgage Loan, in whole or in part, without the prior written consent of the Purchaser. It is understood and agreed that all rights and benefits relating to the solicitation of any Mortgagors to refinance any Mortgage Loans and the attendant rights, title and interest in and to the list of such Mortgagors and data relating to their Mortgages (including insurance renewal dates) shall be transferred to the Purchaser pursuant hereto on the Closing Date and the Seller shall take no action to undermine these rights and benefits. Notwithstanding the foregoing, it is understood and agreed that promotions undertaken by the Seller or any affiliate of the Seller which are directed to the general public at large, or segments thereof, provided that no segment shall consist primarily of the borrowers or obligors under the Mortgage Loans, including, without limitation, mass mailing based on commercially acquired mailing lists, newspaper, radio and television advertisements shall not constitute solicitation under this Section 13.16. This Section 13.16 shall not be deemed to preclude the Seller or any of its affiliates from soliciting any Mortgagor for any other financial products or services. The Seller shall use its best efforts to prevent the sale of the name of any Mortgagor to any Person who is not an affiliate of the Seller.

Section 13.17          MERS.

Purchaser reserves the right to require Seller to employ the Mortgage Electronic Registry System for the settlement of the acquisition and re-sale of Mortgage Loans hereunder.

Section 13.18    Time of the Essence.  Time is of the essence with regard to the performance of Seller's obligations under this Agreement.

Section 13.19    Power of Attorney.  By executing this Agreement, Seller is hereby granting to Purchaser a special power of attorney irrevocably making, constituting and appointing Purchaser as Seller's attorney-in-fact, with power and authority to act in Seller's name and on Seller's behalf to execute, acknowledge and swear to the execution, acknowledgment and filing of all instruments and documents governing the funding, transfer or assignment of any Mortgage Loans purchased by Purchaser hereunder, which shall include, but is not limited to, assignments of the Mortgage Notes, all documents required to execute repurchases of Mortgage Loans on behalf of the Purchaser in accordance with Article III and other provision hereunder and any other documents, or rights thereunder, transferred to Purchaser hereunder.  This power of attorney being granted by Seller is a special power of attorney coupled with an interest and is irrevocable.  It shall survive the dissolution of Seller and is limited to those matters herein set forth.  Seller is the payee on the Mortgage Note and the lender or creditor under applicable consumer credit law with respect to each Mortgage Loan.  If and to the extent, applicable consumer credit law disregards this characterization, Seller shall be deemed to be the exclusive agent for and on behalf of the Purchaser.

Section 13.20    Trustee Capacity of Owner Trustee.

Notwithstanding anything contained herein to the contrary, it is expressly understood and agreed by the parties hereto that (a) this Agreement is executed and delivered on behalf of the Purchaser by Delaware Trust Company, National Association, not individually or personally but solely in its trustee capacity, in the exercise of the powers and authority conferred and vested in it as "Owner Trustee" under the Amended and Restated Trust Instrument of the Terwin Mortgage Warehouse Trust II, dated as of March 3, 2005, between the Program Administrator and Delaware Trust Company, National Association, (b) each of the representations, undertakings and agreements herein made on the part of the Purchaser is made and intended not as personal representations, undertakings and agreements by the Owner Trustee but is made and intended for the purpose of binding only the Purchaser and (c) under no circumstances shall the Owner Trustee be personally liable for the payment of any indebtedness or expenses of the Purchaser or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by the Purchaser under this Agreement or the other related documents.

Section 13.21    Submission to Jurisdiction.

Each of the parties to this Agreement hereby irrevocably and unconditionally:

(a) submits for itself and its property in any legal action or proceeding relating to this Agreement or any amendment thereto, or for recognition and enforcement of any judgment in respect thereof, to the exclusive general jurisdiction of the courts of the State of New York

sitting in the Borough of Manhattan, the federal courts of the United States of America for the Southern District of New York, and appellate courts from any thereof;

       (b) consents that any such action or proceeding may be brought in such courts and, to the extent permitted by law, waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

       (c) agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to its address set forth under the notice requirements in this Agreement; and

       (d) agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction.

IN WITNESS WHEREOF, the Seller, the Purchaser and the Program Administrator have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

TERWIN MORTGAGE WAREHOUSE TRUST II, SERIES XVI, a series of Terwin Mortgage Warehouse Trust II, a Delaware statutory trust

By: Delaware Trust Company, National Association, not in its individual capacity, but solely as Owner Trustee

By _____

Name: ~~Steven A. Finklea, CCTS~~  Jason Concavage

Title: ~~Vice President~~  Trust Officer

Address:    300 Delaware Avenue, Suite 900
            Wilmington Delaware 19801
Attention:  Steven Finklea

Telephone:  (302) 552-3110
Facsimile:  (302) 552-3129

Signature Page-1

SPECTRUM FINANCIAL GROUP, INC., AS SELLER

By _____

    Name:    Jerry Craig, Jr.
    Title:     President

Address:    7047 E. Greenway Parkway #400
               Scottsdale, AZ 85254
Attention:   Jerry Craig, Jr.

Telephone:  (480) 603-1639
Facsimile:   480-603-2739

TERWIN WAREHOUSE MANAGEMENT LLC, AS
PROGRAM ADMINISTRATOR

By _____

    Name:    Thomas K. Guba
    Title:     President

Address:    45 Rockefeller Plaza, Suite 420
               New York, NY 10111
Attention:   Chris Walcott

Telephone:  (212) 218-5877
Facsimile:   (212) 218-5875