Charles R. Jacob III
Haynee C. Kang
MILLER & WRUBEL P.C.
250 Park Avenue
New York, New York 10177
(212) 336-3500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERWIN WAREHOUSE MANAGEMENT LLC, as Program Administrator for and Assignee of TERWIN MORTGAGE WAREHOUSE TRUST II, SERIES XVI, and TERWIN ADVISORS LLC,<br><br>                      Plaintiffs,<br><br>   -against-<br><br>SPECTRUM FINANCIAL GROUP, INC., JERRY CRAIG, SR. and JERRY CRAIG, JR.,<br><br>                  Defendants. | 07 Civ. 5632 (LTS)<br>ECF CASE |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
## AGAINST DEFENDANTS JERRY CRAIG, SR. AND JERRY CRAIG, JR.

Plaintiffs

## TABLE OF CONTENTS

**Page**

SUMMARY OF MOTION ....................................................................... 2

BACKGROUND ................................................................................... 3

ARGUMENT ....................................................................................... 3

    A.    Summary Judgment Is Appropriate Where the Craigs Are
           Precluded from Offering Evidence and Defenses Pursuant to
           the November 20 Order ............................................................... 3

    B.    As the Unconditional and Irrevocable Guarantors of
           Spectrum's Obligations Under the Warehouse Purchase
           Agreement to Terwin, the Craigs Are Liable to TWM for
           $262,699 in Margin Deficit ......................................................... 4

    C.    As Corporate Officers of Spectrum, the Craigs Are
           Individually Liable for Their Participation in Spectrum's
           Unlawful Conversion of $1,222,129 in Payments-In-Full on
           Two Mortgage Loans that Belong to TA ..................................... 6

    D.    Plaintiffs Are Entitled to Prejudgment Interest on the
           Fourth, Fifth and Sixth Causes of Action ................................... 7

CONCLUSION ..................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aeroglide Corp. v. Zeh,
  301 F.2d 420 (2d Cir. 1962) ........................................................................ 5

American Express Travel Related Svcs. Co. v. North Atlantic Res., Inc.,
  261 A.D.2d 310 (1st Dep't 1999) ................................................................. 6

Bank of New York v. Tri Polyta Fin. B.V.,
  No. 01Civ.9104 (LTS)(DFE), 2003 WL 1960587 (S.D.N.Y. Apr. 25, 2003) ............... 4

Breffka & Hehnke GMBH & Co. v. M/V Glorious Success,
  No. 01 Civ. 10599, 2005 WL 3693209 (S.D.N.Y. Mar. 7, 2005) ................... 3

Citibank, N.A. v. Plapinger,
  66 N.Y.2d 90 (1985) ................................................................................... 4

Iglesias v. United States,
  848 F.2d 362 (1988) ................................................................................... 6

Kang v. Lee,
  No. 96 Civ. 1145 (LBS), 1997 WL 669787 (S.D.N.Y. Oct. 27, 1997) ........... 3

New England Insurance Co. v. Healthcare Underwriters Mutual Ins. Co.,
  352 F.3d 599 (2003) ................................................................................... 6

Teachers Ins. & Ann. Assoc. of America v. Butler,
  803 F.2d 61 (2d Cir. 1086) ........................................................................ 4

Union Trust Co. of Rochester v. Willsea,
  275 N.Y. 164 (1937) ................................................................................... 4

**Statutes**

CPLR § 5001(a) ........................................................................................... 6

CPLR § 5001(b) ........................................................................................... 7

CPLR § 5004 ................................................................................................ 7

Fed. R. Civ. P. 37(b)(2) ............................................................................... 1

Fed. R. Civ. P. 56 ........................................................................................ 1

Plaintiffs Terwin Warehouse Management LLC ("TWM"), as Program Administrator for and Assignee of Terwin Mortgage Warehouse Trust II, Series XVI ("Trust"), and Terwin Advisors LLC ("TA") submit this Memorandum of Law in support of their motion for an order pursuant to Fed. R. Civ. P. 56 granting summary judgment on the Fourth, Fifth and Sixth Causes of Action against defendants Jerry Craig, Sr. ("Craig Sr.") and Jerry Craig, Jr. ("Craig, Jr.") (collectively, the "Craigs").

## SUMMARY OF MOTION

On October 31, 2007, plaintiffs moved for an order pursuant to Fed. R. Civ. P. 37(b)(2)(B), (C) and Paragraph 7 of the Court's Initial Conference Order, dated June 20, 2007 (the "Initial Conference Order"), precluding evidence and defenses of the Craigs with respect to the Fourth, Fifth and Sixth Causes of Action of plaintiffs' Complaint, dated June 13, 2007 (the "Complaint") due to the Craigs' willful, deliberate and continuing disregard of the Initial Conference Order.

By Order dated November 20, 2007 (the "November 20 Order"), this Court granted plaintiffs' motion and ordered that the Craigs "are precluded from offering evidence and asserting defenses with respect to the Fourth (against Jerry Craig, Sr. on the guaranty), Fifth (against Jerry Craig, Jr. on the guaranty), and Sixth (against Jerry Craig, Sr. and Jerry Craig, Jr. for conversion) Causes of Action of Plaintiff's Complaint". See Declaration of Charles R. Jacob, dated December 7, 2007 ("Jacob Declaration" or "Jacob Decl.") ¶ 22 and Ex. F thereto.[1]

Plaintiffs respectfully request that the Court grant summary judgment as to the Fourth, Fifth and Sixth Causes of Action and enter: (1) a money judgment against

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed to such term in the Jacob Declaration.

Craig Sr., and in favor of TWM, on TWM's claim on the Craig Sr. Guaranty (Fourth

Cause of Action) for the unpaid Margin Deficit of $262,699.93, plus interest, in the

amount of $64.78 *per diem*, from June 1, 2007 to the date of judgment; (2) a money

judgment against Craig Jr., and in favor of TWM, on TWM's claim on the Craig Jr.

Guaranty (Fifth Cause of Action) for the unpaid Margin Deficit of $262,699.93, plus

interest, in the amount of $64.78 *per diem*, from June 1, 2007 to the date of judgment; and

(3) a money judgment in favor of TA and against Craig Sr. and Craig Jr., jointly and

severally, for conversion of payments-in-full on two mortgage loans, owned by TA, that a

mortgagor mistakenly sent to defendants (Sixth Cause of Action) in the amount of

$1,222,129.01, plus interest, in the amount of $301.35 *per diem*, from April 30, 2007 to

the date of judgment.

## **BACKGROUND**

The nature of this action and its procedural history are set forth in the

accompanying Jacob Declaration.  The Statement of Facts is set forth in the

accompanying Rule 56.1 Statement in Support of Motion for Summary Judgment Against

Jerry Craig, Sr. and Jerry Craig. Jr., dated December 7, 2007 ("Rule 56.1 Statement") and

Declaration of Barbara Chell, dated December 5, 2007 ("Chell Declaration" or "Chell

Decl.") and are incorporated by reference herein.

## **ARGUMENT**

A.     **Summary Judgment Is Appropriate Where
        the Craigs Are Precluded from Offering Evidence
        and Defenses Pursuant to the November 20 Order**

In the November 20 Order, this Court held that the Craigs "are precluded

from offering evidence and asserting defenses with respect to the Fourth (against Jerry

Craig, Sr. on the guaranty), Fifth (against Jerry Craig, Jr. on the guaranty), and Sixth

3

(against Jerry Craig, Sr. and Jerry Craig, Jr. for conversion) Causes of Action of Plaintiff's Complaint." Jacob Decl. Ex. F.

As the Craigs are precluded from offering any evidence or asserting any defenses with respect to plaintiffs' Fourth, Fifth and Sixth Causes of Action, the Craigs are considered "not to have any information" or defenses relating to those causes of action and summary judgment is therefore appropriate. See Kang v. Lee, No. 96 Civ. 1145 (LBS), 1997 WL 669787, at *3 (S.D.N.Y. Oct. 27, 1997) ("Summary judgment is wholly appropriate where defendant is barred from offering evidence by an order of preclusion.") (emphasis added). See also Breffka & Hehnke GMBH & Co. v. M/V Glorious Success, Ltd., No. 01 Civ. 10599, 2005 WL 3693209, at *3 (S.D.N.Y. Mar. 7, 2005) (granting summary judgment in favor of defendant where prior preclusion order prevented plaintiff from establishing prima facie case).

**B.    As the Unconditional and Irrevocable Guarantors
of Spectrum's Obligations Under the Warehouse Purchase Agreement
to Terwin, the Craigs Are Liable to TWM for $262,699 in Margin Deficit**

The Craigs admit that on or about June 17, 2005, each of them executed the Guarantees attached as Exhibits B and C to the Chell Declaration. Chell Decl. Exs. B and C; Jacob Decl. Ex. B at ¶ 5; Rule 56.1 Statement at ¶¶ 10-11.

The Guarantees state:

> Guarantor [Craig Sr. and Craig Jr.] *unconditionally and irrevocably guarantees to the Purchaser [the Trust] in an unlimited amount the due and punctual payment and/or performance of all of Seller's [Spectrum's] obligations under the Loan Purchase Agreement* (the "Obligations"). In case of the failure of Seller [Spectrum] punctually to make any payment, or to perform any act, in respect of the Obligations, Guarantor [Craig Sr. and Craig Jr.] hereby agrees to cause such payment to be made, or such act to be performed, punctually when and as the same shall become due, or necessary to meet the Obligations as if such

4

payment or performance were made by Seller.  Chell Decl.
Exs. B and C at § 1.1 (emphasis added).

As the unconditional and irrevocable guarantors of Spectrum's obligations

under the Warehouse Purchase Agreement to the Trust, there is no dispute, nor can there

be, that the Craigs are liable to the Trust for $262,699 in Margin Deficit owed by

Spectrum to the Trust.  See Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 93 (1985)

(foreclosing defenses and counterclaims with respect to obligations pursuant to

unconditional and absolute guarantee executed by defendant).  This Court has recognized

that, as here, an "unconditional" guarantee constitutes a waiver of "any and all affirmative

defenses." Bank of New York v. Tri Polyta Fin. B.V., No. 01Civ.9104 (LTS)(DFE), 2003

WL 1960587, at *3 (S.D.N.Y. Apr. 25, 2003) (granting summary judgment on issue of

guarantor's obligation to make payment, reasoning that "unconditional" guarantee

constituted waiver of defenses to payment).

The liability of the Craigs, as unconditional and irrevocable guarantors of

Spectrum's obligations to the Trust under the Warehouse Purchase Agreement, for the

$262,699 in Margin Deficit owed by Spectrum to the Trust is not affected by the

Spectrum Bankruptcy.  See Union Trust Co. of Rochester v. Willsea, 275 N.Y. 164, 166

(1937) ("It is well-settled that the liability of a guarantor of a corporate debt is not affected

by the institution of bankruptcy proceedings involving the corporation.").  Moreover,

plaintiffs are not prevented by the bankruptcy stay in the Spectrum Bankruptcy from

proceeding against the Craigs, as guarantors of Spectrum's obligations under the

Warehouse Purchase Agreement, for $262,699 in margin deficit owed by Spectrum to

plaintiffs.  See Teachers Ins. & Ann. Assoc. of America v. Butler, 803 F.2d 61, 65 (2d Cir.

1086) ("It is well established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.").

Thus, as a matter of law, the Craigs are liable for $262,699 in Margin Deficit, and summary judgment should be entered accordingly.

**C.    As Corporate Officers of Spectrum, the Craigs
Are Individually Liable for Their Participation in
Spectrum's Unlawful Conversion of $1,222,129 in
Payments-In-Full on Two Mortgage Loans that Belong to TA**

In the Sixth Cause of Action, plaintiffs allege that the Craigs wrongfully converted for their personal use payments-in-full ("PIF Payments") of $1.2 million on two mortgage loans, owned by TA, that a mortgagor mistakenly sent to defendants.

According to the Answer, Jerry Craig, Sr. is Spectrum's sole director and Jerry Craig, Jr. is Spectrum's President. Jacob Decl. Ex. B at ¶ 3. Spectrum is a closely-held corporation in which the Craigs are the principals and control Spectrum's actions. Chell Decl. at ¶¶ 9-10; Rule 56.1 Statement at ¶ 35. Spectrum and the Craigs acknowledged that the PIF Payments belonged to TA, but failed and refused to forward the PIF Payments to TA. Chell Decl. ¶ 36; Rule 56.1 Statement at ¶ 33. As the responsible officers of Spectrum, the Craigs controlled Spectrum and caused it to engage in this conduct towards TA with full awareness that the PIF Payments belonged to TA and intended to interfere with TA's lawful right of possession in the PIF Payments. Chell Decl. at ¶ 38; Rule 56.1 Statement at ¶ 35.

As responsible officers of Spectrum, the Craigs (i) had full knowledge of Spectrum's conversion of the PIF Payments, (ii) participated in the conversion complained of, and (iii) failed to take any steps to prevent or correct the unlawful conversion of the PIF Payments, and, as a matter of law, are personally liable to TA for

6

defendants' unlawful conversion of the PIF Payments. See Aeroglide Corp. v. Zeh, 301

F.2d 420, 421-22 (2d Cir. 1962) (applying New York law and holding that cooperative's

liability for conversion accrued to cooperative's director who authorized such

conversion); American Express Travel Related Svcs. Co. v. North Atlantic Res., Inc., 261

A.D.2d 310, 311 (1st Dep't 1999) ("[A] corporate officer who participates in the

commission of a tort may be held individually liable, regardless of whether the officer

acted on behalf of the corporation in the course of official duties").

Thus, as a matter of law, the Craigs are liable for $1,222,129 in PIF

Payments which defendants unlawfully converted and which belong to TA, and summary

judgment should be entered accordingly.

**D.     Plaintiffs Are Entitled to Prejudgment Interest
on the Fourth, Fifth and Sixth Causes of Action**

The Warehouse Purchase Agreement, the Loan Purchase Agreement and

the Guarantees are governed by New York law;[2] under New York law, TWM and TA are

entitled to recover from the Craigs prejudgement interest at the statutory rate of nine-

percent on their claims.

CPLR § 5001(a) provides that TWM and TA are entitled to prejudgment

interest as of right for the Craigs' breach of contract and conversion. Id. ("Interest shall

be recovered upon a sum awarded because of a breach of performance of a contract or

because of an act or omission depriving or otherwise interfering with title to, or possession

or enjoyment of, property...."). See also New England Insurance Co. v. Healthcare

Underwriters Mutual Ins. Co., 352 F.3d 599, 606 (2003) ("under New York law

---

[2] See Chell Decl. Ex. A (Warehouse Purchase Agreement) at p. 74; Ex. E (Loan Purchase Agreement) at p. 75 ; and Exs. B and C (Guarantees) at § 10.6.

prejudgment interest is normally recoverable as a matter of right in an action for breach of contract"); Iglesias v. United States, 848 F.2d 362, 365 (1988) (under New York law, "interest is recoverable of right in an action for conversion").

The amount of interest shall be computed on damages from "the earliest ascertainable date" damages were incurred and at the statutory rate of nine-percent. CPLR §§ 5001(b), 5004.

With respect to the Fourth and Fifth Causes of Action (under the Craig Sr. Guaranty and Craig Jr. Guaranty), interest to date from June 1, 2007 (the date TWM sent Spectrum notice requesting it to transfer to the Trust the Margin Deficit, in the amount of $262,699.93) is running at the amount of $64.78 *per diem.* Chell Decl. ¶ 29. This amount is computed by multiplying $262,699.93 by the New York statutory interest rate of 9%, and dividing the result by 365 days. Chell Dec. ¶ 29.

With respect to the Sixth Cause of Action for conversion, interest to date from April 30, 2007, the date that Spectrum first acknowledged that it was exercising dominion and control over the PIF Payments, is running at the amount of $301.35 *per diem.* Chell Decl. ¶ 41. This amount is computed by multiplying $1,222,129.01 by the New York statutory interest rate of 9%, and dividing the result by 365 days. Chell Decl. ¶ 41.

## CONCLUSION

For these reasons, plaintiffs respectfully request that the Court grant summary judgment on the Fourth, Fifth and Sixth Causes of Action and enter a judgment in the total of these amounts:

- Fourth and Fifth Causes of Action on TWM's claims on the Craig Sr. and Craig Jr. Guarantees for unpaid Margin Deficit of $262,699.93; plus

- Interest on the Fourth and Fifth Causes of Action from June 1, 2007 (the date TWM Spectrum notice requesting it to transfer to the Trust the Margin Deficit, in the amount of $262,699.93) to the date of judgment at a rate of $64.78 *per diem*; plus

- Sixth Cause of Action on TA's claim against the Craigs for conversion of PIF Payments in the amount of $1,222,129.01; plus

- Interest on the Sixth Cause of Action from April 30, 2007, the date that Spectrum first acknowledged that it was exercising domination and control over the PIF Payments, to the date of judgment at a rate of $301.35 *per diem*.

Dated: December 7, 2007

MILLER & WRUBEL P.C.

By:     Charles R. Jacob III
        Haynee C. Kang
        250 Park Avenue
        New York, New York 10177
        (212) 336-3500
        Attorneys for Plaintiffs